[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 18, 2005
THOMAS K. KAHN
CLERK

No. 03-15884

D.C. Docket Nos. 03-21642-CV-PAS; 03-21643-CV-PAS; 03–21644-CV-PAS;
03-21645-CV-PAS; 03-21646-CV-PAS; 03-21647-CV-PAS; 03-21648-CV-PAS;
03-21649-CV-PAS; 03-21650-CV-PAS; 03-21651-CV-PAS

RIZALYN BAUTISTA, Individually and as
Personal Representative of the Estate of Mari–John
Bautista, and all claiming by and through her,

Plaintiff–Appellant,

versus

STAR CRUISES,
NORWEGIAN CRUISE LINE, LTD.,

Defendants–Appellees.

PAUL PERALTA,

Plaintiff–Appellant,

versus

STAR CRUISES,
NORWEGIAN CRUISE LINE, LTD.,

Defendants–Appellees.

RAYMOND LOVINO,

Plaintiff–Appellant,

versus

STAR CRUISES,
NORWEGIAN CRUISE LINE, LTD.,

Defendants–Appellees.

---

RONALDO MARCELINO,

Plaintiff–Appellant,

versus

STAR CRUISES,
NORWEGIAN CRUISE LINE, LTD.,

Defendants–Appellees.

---

ROLANDO TEJERO,

Plaintiff–Appellant,

versus

STAR CRUISES,
NORWEGIAN CRUISE LINE, LTD.,

Defendants–Appellees.

---

ABDI COMEDIA,

                                        Plaintiff–Appellant,

                        versus

STAR CRUISES,
NORWEGIAN CRUISE LINE, LTD.,

                                        Defendants–Appellees.

---

CRISTINA L. VALENZUELA, Individually and
as Personal Representative of the Estate of Candido
S. Valenzuela, Jr. and all those claiming through her,

                                        Plaintiff–Appellant,

                        versus

STAR CRUISES,
NORWEGIAN CRUISE LINE, LTD.,

                                        Defendants–Appellees.

---

MARILEN S. BERNAL, Individually and as Personal
Representative of the Estate of Ramil G. Bernal,
and all those claiming by and through her

                                        Plaintiff–Appellant,

                        versus

STAR CRUISES,
NORWEGIAN CRUISE LINE, LTD.,

                                        Defendants–Appellees.

WILLY I. VILLANUEVA, Individually and as Personal
Representative of the Estate of Rene Villanueva,
and all those claiming through him,

Plaintiff–Appellant,

versus

STAR CRUISES,
NORWEGIAN CRUISE LINE, LTD.,

Defendants–Appellees.

MARIA GARCIA L. ROSAL, Individually and as Personal
Representative of the Estate of Ricardo B. Rosal, III,
and all those claiming by and through her,

Plaintiff–Appellant,

versus

STAR CRUISES,
NORWEGIAN CRUISE LINE, LTD.,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Florida

**(January 18, 2005)**

4

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and RESTANI[*], Judge.

RESTANI, Judge:

The S/S Norway's steam boiler exploded on May 25, 2003, while the cruise ship was in the Port of Miami. Six of the crewmembers represented in this action were killed and four were injured.[1] Each crewmember's employment agreement with Defendant NCL includes an arbitration clause, which the district court enforced pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, opened for signature June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (the "Convention"), and its implementing legislation, 9 U.S.C. §§ 202–208 (2002) (the "Convention Act"). See Bautista v. Star Cruises, 286 F. Supp. 2d 1352 (S.D. Fla. 2003). Plaintiffs' appeal presents an issue of first impression in this Circuit: whether the crewmembers' employment agreements were shielded from arbitration by the seamen employment contract exemption contained in section 1 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (2002) (the

---

[*] Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

[1] The injured crewmembers are plaintiff–appellants in this case along with personal representatives of the decedents. In the interest of precision, this opinion refers to plaintiff–appellants collectively as "Plaintiffs," and refers to the injured and deceased crewmembers collectively as "crewmembers" when discussing those who were employed by NCL.

5

"FAA").[2] Because the FAA seamen exemption does not apply and the district court had jurisdiction to compel arbitration, we affirm.

## BACKGROUND

### I. THE SUITS AGAINST STAR CRUISES AND NCL

Following the explosion aboard the Norway, Plaintiffs filed separate but nearly identical suits in Florida circuit court against Defendant–Appellee NCL, owner of the Norway, and Defendant–Appellee Star Cruises, alleged by Plaintiffs to be the parent company of NCL. The complaints sought damages for negligence and unseaworthiness under the Jones Act, 46 U.S.C. § 688, and for failure to provide maintenance, cure and unearned wages under the general maritime law of the United States.

NCL removed the ten cases to federal district court pursuant to section 205 of the Convention Act, which permits removal before the start of trial when the dispute relates to an arbitration agreement or arbitral award covered by the

---

[2] This opinion uses "FAA" to refer to the statute contained in chapter 1 of title 9 and "Convention Act" to refer to chapter 2 of title 9. Courts often refer to the entirety of title 9 as the Federal Arbitration Act. See, e.g., Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1440 (11th Cir. 1998). As demonstrated in the Part I of the discussion below, however, the relationship between the two statutes is determined by their terms rather than nomenclature.

6

Convention.  See 9 U.S.C. § 205.[3]  In the notices of removal filed with the district court, NCL described how the crewmembers were bound by employment agreements that include an arbitration provision covered by the Convention.

## II.     THE CREWMEMBERS' EMPLOYMENT AGREEMENTS INCORPORATE AN ARBITRATION PROVISION

At the time of the explosion, each crewmember's employment was governed by the terms of a standard employment contract executed by the crewmembers and representatives of NCL in the Philippines between August 2002 and March 2003. The Philippine government regulated the form and content of such employment contracts, as well as other aspects of the seamen hiring process, through a program administered by the Philippine Overseas Employment Administration ("POEA"), a division of the Department of Labor and Employment of the Republic of the Philippines ("DOLE").

Each crewmember signed a one–page standard employment agreement created by the POEA, with some variations according to the position for which the crewmember was hired.  Each agreement sets forth the basic terms and conditions of the crewmember's employment, including the duration of the contract, the position accepted, and the monthly salary and hours of work.  Additional terms

---

[3]  After removal to federal district court, the ten cases were consolidated for pretrial purposes on July 14, 2003.  Bautista, 286 F. Supp. 2d at 1355 n.1.

and conditions are incorporated by reference: Paragraph 2 provides that the contract's terms and conditions shall be observed in accordance with POEA Department Order No. 4 and POEA Memorandum Circular No. 9. Department Order No. 4, in turn, incorporates the document containing the arbitration clause: The Standard Terms and Conditions Governing the Employment of Filipino Seafarers On Board Ocean-Going Vessels (the "Standard Terms").[4] Section 29 of the Standard Terms requires arbitration "in cases of claims and disputes arising from [the seaman's] employment," through submission of the claims to the National Labor Relations Commission ("NLRC"), voluntary arbitrators, or a panel of arbitrators. Standard Terms, sec. 29; R.3.60, p. 1.[5]

---

[4] The employment agreements refer explicitly to the Standard Terms in paragraph 3.

[5] The full text of Section 29 of the Standard Terms follows:

In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment.

Standard Terms, sec. 29; R.3.60, p. 1.

A POEA official verified and approved the execution of the employment contract by the crewmembers and NCL representatives. Although Plaintiffs dispute that the crewmembers saw the arbitration provision or had it explained to them, see Pls.' Mot. for Remand, Exs. 1–8, copies of the Standard Terms provided to the district court by NCL indicate the crewmembers initialed or signed the Standard Terms. See Defs.' Resp. to Pls.' Mot. for Remand, Exs. D–F; R–3–60. NCL also provided affidavits from managers at various manning agencies licensed by the POEA to recruit seamen. In the affidavits, the managers attest that (1) they explained the employment documents to the seamen in their native language; (2) the seamen had an opportunity to review the documents; and (3) the seamen were required to attend a Pre-Departure Orientation Seminar for seamen, which was conducted in both the English and Filipino languages and which reviewed, among other subjects, the Standard Terms and the dispute settlement procedures provided for in the employment contract. Id. at Exs. C–F; R–3–60.

III. **THE DISTRICT COURT COMPELS ARBITRATION**

In an order issued on October 14, 2003, the district court granted NCL's motion to compel arbitration and denied Plaintiffs' motion to remand the case to state court. In disposing of the case, the district court ordered that the parties submit to arbitration in the Philippines pursuant to Section 29 of the Standard

Terms and retained jurisdiction to enforce or confirm any resulting arbitral award. Plaintiffs appeal.

## JURISDICTION

A case covered by the Convention confers federal subject matter jurisdiction upon a district court because such a case is "deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. Defendants removed these cases from state court pursuant to 9 U.S.C. § 205, which permits removal of disputes relating to arbitration agreements covered by the Convention. See, e.g., Notice of Removal, R1–1–3. Plaintiffs claim that this case is not covered by the Convention, and thereby challenge the district court's jurisdiction. We discuss this challenge below. Assuming the district court exercised jurisdiction appropriately, its order is final and appealable because, by compelling arbitration of the dispute, it "dispos[ed] of all the issues framed by the litigation and [left] nothing for the district court to do but execute the judgment." See Employers Ins. v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1321 (11th Cir. 2001).[6]

## STANDARD OF REVIEW

We review de novo the district court's order to compel arbitration.

_____

[6] We certified the appealability of this action prior to oral argument. Order (11th Cir. Mar. 2, 2004).

10

Employers Ins., 251 F.3d at 1321.

## DISCUSSION

In deciding a motion to compel arbitration under the Convention Act, a court conducts "a very limited inquiry." Francisco v. Stolt Achievement MT, 293 F.3d 270, 273 (5th Cir. 2002), cert. denied, 537 U.S. 1030, 123 S. Ct. 561, 154 L. Ed. 2d 445 (2002); DiMercurio v. Sphere Drake Ins.' PLC, 202 F.3d 71, 74 (1st Cir. 2000); Ledee v. Ceramiche Ragno, 684 F.2d 184, 186 (1st Cir. 1982). A district court must order arbitration unless (1) the four jurisdictional prerequisites are not met, Std. Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 449 (3d Cir. 2003);[7] or (2) one of the Convention's affirmative defenses applies. DiMercurio, 202 F.3d at 79; see also Czarina, L.L.C. v. W.F. Poe Syndicate, 358 F.3d 1286, 1292 n.3 (11th Cir. 2004) ("jurisdictional prerequisites to an action confirming an award are different from the several affirmative defenses to confirmation").

Two jurisdictional prerequisites are at issue here. First, we must determine

---

[7] These four require that (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states. Std. Bent Glass Corp., 333 F.3d at 449. It is beyond dispute that the second and fourth conditions are fulfilled in this case. The crewmembers' arbitration provisions provide for arbitration in the Philippines, a signatory of the Convention. The crewmembers are not American citizens, but are citizens of the Philippines.

11

whether the arbitration agreement arises out of a commercial legal relationship. Second, we ask whether there exists an "agreement in writing" to arbitrate the matter in dispute. Lastly, we consider Plaintiffs' purported affirmative defenses that the arbitration provision is unconscionable under U.S. law and incapable of being arbitrated under the law of the Philippines. In analyzing these arguments, we are mindful that the Convention Act "generally establishes a strong presumption in favor of arbitration of international commercial disputes." Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1440 (11th Cir. 1998) (citing Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 638–40, 105 S. Ct. 3346, 3359–61, 87 L. Ed. 2d 444 (1985)). Plaintiffs' arguments fail.

## I. PLAINTIFFS' EMPLOYMENT CONTRACTS ARE COMMERCIAL LEGAL RELATIONSHIPS UNDER THE CONVENTION ACT, REGARDLESS OF THE FAA SEAMEN EXEMPTION

We have yet to determine whether the FAA exemption for seamen's employment contracts applies to arbitration agreements covered by the Convention

12

Act.[8]  The district court determined that it does not.  This conclusion is consistent

with that of the Fifth Circuit—the only court of appeals to decide this issue—and

several district courts.  See Freudensprung v. Offshore Tech. Servs., Inc., 379 F.3d

327 (5th Cir. 2004); Francisco v. Stolt Achievement MT, 293 F.3d 270 (5th Cir.

2002), cert. denied, 537 U.S. 1030, 123 S. Ct. 561, 154 L. Ed. 2d 445 (2002);

Acosta v. Norwegian Cruise Line, Ltd., 303 F. Supp. 2d 1327 (S.D. Fla. 2003);

Adolfo v. Carnival Corp., No. 02–23672, 2003 U.S. Dist. LEXIS 24143 (S.D. Fla.

Mar. 17, 2003); Amon v. Norwegian Cruise Lines, Ltd., No. 02–21025, 2002 U.S.

Dist. LEXIS 27064 (S.D. Fla. Sept. 26, 2002).

As we take up this issue of statutory interpretation, the first step is to

determine whether the statutory language has a plain and unambiguous meaning

by referring to "the language itself, the specific context in which that language is

---

[8]  The seamen employment contract exemption appears in section 1 of the FAA:

§ 1.  "Maritime transactions" and "commerce" defined; exceptions to operation of title

[. . .] "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1 (emphasis added).

13

used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S. Ct. 843, 846, 136 L. Ed. 2d 808 (1997). The inquiry ceases if the language is clear and "the statutory scheme is coherent and consistent." Id. at 340 (quoting United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290 (1989)). Such is the case here. The statutory framework of title 9 and the language and context of the Convention Act preclude the application of the FAA seamen's exemption, either directly as an integral part of the Convention Act or residually as a non–conflicting provision of the FAA.

## A. The FAA Seamen Exemption Does Not Apply to the Convention Act Directly

### 1. Overview of the Convention and the Convention Act

The Convention requires that a Contracting State "shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen . . . between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable

14

of settlement by arbitration." Convention, art. II(1).[9]  When the United States

acceded to the Convention in 1970, it exercised its right to limit the Convention's

application to commercial legal relationships as defined by the law of the United

States:

> The United States of America will apply the Convention only to
> differences arising out of legal relationships, whether contractual or
> not, which are considered as commercial under the national law of the
> United States.

Convention, n. 29.[10]  Plaintiffs assert that the United States national law definition

---

[9]  The full text of Article II provides as follows:

1.  Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2.  The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

3.  The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Convention, art. II.

[10]  Article I(3) of the Convention permits any State party to apply the Convention "only to the differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the State making such declaration." Convention, art. I(3).

15

of "commercial" resides in section 1 of the FAA, which defines "commerce" and provides that "nothing herein contained shall apply to contracts of employment of seamen." 9 U.S.C. § 1. Although section 1 clearly exempts seamen's employment contracts from the FAA, see Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109, 121 S. Ct. 1302, 1306, 149 L. Ed. 2d 234 (2001), the exemption's application outside the FAA is restricted by the second and third chapters of title 9.

### 2. The Statutory Framework of Title 9 of the United States Code

The three chapters of title 9 are closely interrelated, but, contrary to Plaintiffs' argument, they are not a seamless whole. As indicated, the FAA and the Convention Act comprise Chapter 1 and Chapter 2, respectively. Chapter 3 contains the legislation implementing the Inter–American Convention on International Commercial Arbitration, Jan. 30, 1975, 14 I.L.M. 336 (entered into force June 16, 1976). 9 U.S.C. §§ 301–307 (the "Inter–American Act"). Within the general field of arbitration, each act has a specific context and purpose. Congress, as it added the Convention Act and then the Inter–American Act to title 9, anticipated conflicts among these treaty–implementing statutes and the FAA. Congress addressed potential conflicts in two ways, each of which limits the degree to which title 9 may be considered a single statute.

16

The first is general in nature. The FAA applies residually to supplement the provisions of the Convention Act and the Inter–American Act. Rather than put the Convention Act and the Inter–American Act on equal footing with the FAA in the field of foreign arbitration, Congress gave the treaty–implementing statutes primacy in their fields, with FAA provisions applying only where they did not conflict. See 9 U.S.C. § 208 (the Convention Act residual provision); 9 U.S.C. § 307 (the Inter–American Act residual provision). This hierarchical structure accords with our understanding that, "[a]s an exercise of the Congress' treaty power and as federal law, 'the Convention must be enforced according to its terms over all prior inconsistent rules of law.'" Indus. Risk Insurers, 141 F.3d at 1440 (quoting Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co., 767 F.2d 1140, 1145 (5th Cir. 1985)).

The second technique for reconciling title 9's chapters is more specific. Certain provisions of the Convention Act and the Inter–American Act refer explicitly to specific sections of other chapters of title 9. Section 302 of the Inter–American Act, for example, directly incorporates several sections of the Convention Act: "[s]ections 202, 203, 204, 205, and 207 of this title shall apply to this chapter [9 U.S.C. §§ 301–307] as if specifically set forth herein." 9 U.S.C. § 302. Most relevant for the instant case is the reference in section 202 of the

17

Convention Act to section 2 of the FAA.

### 3. Section 202 of the Convention Act

In contrast to the Inter–American Act's direct incorporation of several Convention Act sections, section 202 does not incorporate section 2 of the FAA as an exhaustive description of the Convention Act's scope. Rather, section 202 uses section 2 as an illustration of the types of agreements covered by the Convention Act.

In articulating the Convention's commercial scope under the laws of the United States, section 202 of the Convention Act provides that an agreement falls under the Convention if it "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title [9 U.S.C. § 2]." 9 U.S.C. § 202

(emphasis added).[11]  Section 2 of the FAA makes valid and enforceable "[a]

written provision in any maritime transaction or <u>a contract evidencing a

transaction involving commerce</u> to settle by arbitration."  9 U.S.C. § 2 (emphasis

added).

The Convention Act's reference to section 2 does not indicate an intent to

limit the definition of "commercial" to those described in section 2 of the FAA as

modified by section 1; the expansive term "including"  would be superfluous if the

FAA provided the full and complete definition.  "Including" demonstrates that, at

the very least, Congress meant for "commercial" legal relationships to consist of

contracts evidencing a commercial transaction, as listed in section 2, <u>as well as</u>

similar agreements.  See <u>Federal Land Bank v. Bismarck Lumber Co.</u>, 314 U.S.

---

[11]  The full text of § 202 is as follows:

§ 202 Agreement or award falling under the Convention

An arbitration agreement or arbitral award arising out of a legal relationship,
whether contractual or not, which is considered as commercial, including a
transaction, contract, or agreement described in section 2 of this title [9 U.S.C. §
2], falls under the Convention. An agreement or award arising out of such a
relationship which is entirely between citizens of the United States shall be
deemed not to fall under the Convention unless that relationship involves property
located abroad, envisages performance or enforcement abroad, or has some other
reasonable relation with one or more foreign states. For the purpose of this section
a corporation is a citizen of the United States if it is incorporated or has its
principal place of business in the United States.

9 U.S.C. § 202.

95, 100, 62 S. Ct. 1, 4, 86 L. Ed. 65 (1941) ("the term 'including' is not one of all–embracing definition, but connotes simply an illustrative application of the general principle."); Argosy Ltd. v. Hennigan, 404 F.2d 14, 20 (5th Cir. 1968) ("The word 'includes' is usually a term of enlargement, and not of limitation . . . . It therefore conveys the conclusion that there are other items includable, though not specifically enumerated by the statutes.").

We therefore understand the reference to section 2 of the FAA to be generally illustrative of the commercial legal relationships covered by section 202. The illustration rendered by section 2 includes employment agreements and makes no mention of the section 1 seamen exemption. Cf. Circuit City Stores, 532 U.S. at 113, 121 S. Ct. at 1308 (construing section 2 and rejecting the proposition that an employment contract is not a "contract evidencing a transaction involving interstate commerce"). Accordingly, the terms of the Convention Act do not provide that we read section 1 into section 202.[12]

Plaintiffs cite committee testimony in the legislative history in the hope of demonstrating that Congress intended section 202 of the Convention Act to

---

[12]  Plaintiffs emphasize that the heading to Section 1 of the FAA reads "exceptions to title."  A section heading may be helpful in construing a statute's meaning, but "it may not be used as a means of creating an ambiguity when the body of the act itself is clear."  2A Norman J. Singer, Sutherland on Statutes and Statutory Construction § 47:07 (6th ed. 2000).  The Convention Act is clear.

20

incorporate the FAA seamen exemption. Ambassador Richard Kearney, Chairman of the Secretary of State's Advisory Committee on Private International Law, testified before the Senate Foreign Relations Committee that

> the definition of commerce contained in section 1 of the original Arbitration Act is the national law definition for the purposes of the declaration. A specific reference, however, is made in section 202 to section 2 of title 9; which is the basic provision of the original Arbitration Act.

S. Comm. on Foreign Relations, Foreign Arbitral Awards, S. Rep. No. 91-702, at 6 (1970). Although it is plausible to infer from Ambassador Kearney's comments that he believed the section 1 exemptions should apply to the Convention Act, his views as a single State Department official are a relatively unreliable indicator of statutory intent. See Circuit City Stores, 532 U.S. at 120, 121 S. Ct. at 1311 ("Legislative history is problematic even when the attempt is to draw inferences from the intent of duly appointed committees of the Congress."); Francisco, 239 F.3d at 276 (quoting Circuit City Stores to discount Ambassador Kearney's testimony). Plaintiffs nevertheless claim that, according to Udall v. Tallman, 380 U.S. 1, 16, 85 S. Ct. 792, 801, 13 L. Ed. 2d 616 (1965), his views are entitled to "great deference." Pls.' Op. Br. at 27. Udall, however, accords such deference only to "the officers or agency charged with [the statute's] administration," 380 U.S. at 16, 85 S. Ct. at 801, and there is no indication that the State Department is

21

so charged. Even if the above testimony were owed some deference, it could not alter the plain terms of the Convention Act. See Barnhart v. Sigmon Coal Co., 534 U.S. 438, 457, 122 S. Ct. 941, 954, 151 L. Ed. 2d 908 (2002) ("Floor statements from two Senators cannot amend the clear and unambiguous language of a statute."). Rather than directly incorporate an FAA provision that Congress did not, we adhere to the framework Congress provided and evaluate the applicability of an unmentioned FAA section according to the Convention Act's residual application provision.

**B.     The FAA Seamen Exemption Does Not Apply Residually**

As noted above, section 208 of the Convention Act provides that non–conflicting provisions of the Arbitration Act apply residually to Convention Act cases:

> Chapter 1 [9 U.S.C. §§ 1 et seq.] applies to actions and proceedings brought under this chapter [9 U.S.C. §§ 201 et seq.] to the extent that chapter is not in conflict with this chapter [9 U.S.C. §§ 201 et seq.] or the Convention as ratified by the United States.

9 U.S.C. § 208 (emphasis added); cf. 9 U.S.C. § 307 (providing for residual application of the FAA to the Inter–American Act). Under this residual provision, the issue is whether the FAA seamen exemption conflicts with the Convention Act or the Convention as ratified by the United States.

A conflict exists between the FAA seamen exemption, which is narrow and specific, and the language of the Convention and the Convention Act, which is broad and generic. Plaintiffs, under the impression that an FAA term may only be contradicted by name, argue that no conflict exists because section 202 of the Convention Act is silent as to seamen's employment contracts. According to this logic, a statutory provision pertaining to persons above the age of eighteen would not conflict with a provision that exempts thirty year-olds. Because the Convention Act covers commercial legal relationships without exception, it conflicts with section 1, an FAA provision that exempts certain employment agreements that—but for the exemption—would be commercial legal relationships. The Fifth Circuit came to the same conclusion in Francisco:

> In short, the language of the Convention, the ratifying language, and the Convention Act implementing the Convention do not recognize an exception for seamen employment contracts. On the contrary, they recognize that the only limitation on the type of legal relationship falling under the Convention is that it must be considered "commercial," and we conclude that an employment contract is "commercial."

293 F.3d at 274. We see no reason to diverge from the sensible reasoning of our sister Circuit.

Indeed, to read industry–specific exceptions into the broad language of the Convention Act would be to hinder the Convention's purpose:

23

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15, 94 S. Ct. 2449, 2457 n.15, 41 L. Ed. 2d 270 (1974) (emphasis added); see also Indus. Risk Insurers, 141 F.3d at 1440 (identifying additional purposes of the Convention, such as relieving congestion in the courts and providing an expedient alternative to litigation).  In pursuing effective, unified arbitration standards, the Convention's framers understood that the benefits of the treaty would be undermined if domestic courts were to inject their "parochial" values into the regime:

> In their discussion of [Article II(1)], the delegates to the Convention voiced frequent concern that courts of signatory countries in which an agreement to arbitrate is sought to be enforced should not be permitted to decline enforcement of such agreements on the basis of parochial views of their desirability or in a manner that would diminish the mutually binding nature of the agreements.

Scherk, 417 U.S. at 520 n.15, 94 S. Ct. at 2457 n.15.  This concern is addressed by the broad language of section 202 of the Convention Act.  Considering the language of the Convention Act in the context of the framework of title 9 and the purposes of the Convention, we find no justification for removing from the Convention Act's scope a subset of commercial employment agreements.  The

crewmembers' arbitration provisions constitute commercial legal relationships within the meaning of the Convention Act.

## II.   PLAINTIFFS' EMPLOYMENT AGREEMENTS WERE AGREEMENTS IN WRITING, WHICH VESTED THE JURISDICTION OF THE DISTRICT COURT

Finding no error in the district court's determination that instant arbitration provisions are commercial legal relationships, we turn to the other relevant jurisdictional prerequisite, i.e., that the party seeking arbitration provide "an agreement in writing" in which the parties undertake to submit the dispute to arbitration. Convention, art. II(1); see also Czarina, 358 F.3d at 1291. Agreements in writing include "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." Convention, art. II(2).

NCL supplied the district court with copies of the employment agreement and the Standard Terms signed by each crewmember. See Defs.' Resp. to Pls.' Mot. for Remand, Exs. D–F; R–3–60. Although Plaintiffs claim the crewmembers did not have an opportunity to review the entirety of the Standard Terms before signing, Plaintiffs do not dispute the veracity of the signatures. See Pls.' Op. Br. at 36 n.1. Accordingly, this documentation fulfills the jurisdictional prerequisite that the court be provided with an agreement to arbitrate signed by the parties.

Plaintiffs try in vain to identify three reasons why the signed documents fail to constitute agreements in writing.

First, Plaintiffs impugn the incorporation of the Standard Terms into the employment agreement, citing decisions of other Circuits that interpret Article II(2) to require inclusion of an arbitration provision in a signed agreement or an exchange of letters or telegrams. See Std. Bent Glass, 333 F.3d at 449; Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd., 186 F.3d 210, 218 (2d Cir. 1999); cf. United States Fidelity & Guar. Co. v. West Point Constr. Co., 837 F.2d 1507, 1508 (11th Cir. 1988) (finding that, under the FAA, the incorporation of an arbitration provision expressed an intent of the parties to arbitrate). This argument fails to address the fact that the crewmembers signed the Standard Terms, the document containing the arbitration provision.

Second, Plaintiffs assert that, in order to satisfy the agreement–in–writing requirement, NCL bears an "evidentiary burden" of establishing that the crewmembers knowingly agreed to arbitrate disputes arising from the employment relationship. See Pls.' Op. Br. at 42. The parties disagree as to whether the crewmembers were specifically notified of the arbitration provision, and each side supports its position with affidavits. See Pls.' Mot. for Remand, Exs. 1–8; Defs.' Resp. to Pls.' Mot. for Remand, Exs. C–F; R–3–60. Plaintiffs also emphasize the

general solicitude for seamen reflected in the Jones Act and Garrett v. Moore–McCormack Co., 317 U.S. 239, 243–50, 63 S. Ct. 246, 249–50, 87 L. Ed. 239 (1942). Plaintiffs, however, offer no authority indicating that the Convention or the Convention Act impose upon the party seeking arbitration the burden of demonstrating notice or knowledgeable consent. To require such an evidentiary showing in every case would be to make an unfounded inference from the terms of the Convention and would be squarely at odds with a court's limited jurisdictional inquiry, an inquiry colored by a strong preference for arbitration. See Francisco, 293 F.3d at 273. It is no better to style Plaintiffs' defective notice claim as an affirmative defense, as virtually every case would be susceptible to a dispute over whether the party resisting arbitration was aware of the arbitration provision when the party signed the agreement. In the limited jurisdictional inquiry prescribed by the Convention Act, we find it especially appropriate to abide by the general principle that "[o]ne who has executed a written contract and is ignorant of its contents cannot set up that ignorance to avoid the obligation absent fraud and misrepresentation." Vulcan Painters v. MCI Constructors, 41 F.3d 1457, 1461 (11th Cir. 1995).

Third, Plaintiffs' argue that the agreement–in–writing prerequisite remains unfulfilled because NCL did not attach the signed copies of the Standard Terms to

27

its notices of removal to the district court. NCL was under no such obligation. The agreement–in–writing prerequisite does not specify when a party seeking arbitration must provide the court with the agreement in writing. The Convention Act's removal provision states that "[t]he procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal." 9 U.S.C. § 205. Section 205 does not require a district court to review the putative arbitration agreement—or investigate the validity of the signatures thereon—before assuming jurisdiction: "The language of § 205 strongly suggests that Congress intended that district courts continue to be able to assess their jurisdiction from the pleadings alone." Beiser v. Weyler, 284 F.3d 665, 671 (5th Cir. 2002); cf. 28 U.S.C. § 1446 (requiring only "a short and plain statement of the grounds for removal"). NCL's notices of removal met procedural requirements by identifying the relevant documents and describing how they bind the Plaintiffs to arbitration. See, e.g., R1–1–3; see also Whole Health Chiropractic & Wellness, Inc. v. Humana Medical Plan, Inc., 254 F.3d 1317, 1321 (11th Cir. 2001) ("The law disfavors court meddling with removals based upon procedural—as distinguished from jurisdictional—defects").

## III.  PLAINTIFFS' AFFIRMATIVE DEFENSES FAIL

The Convention requires that courts enforce an agreement to arbitrate unless the agreement is "null and void, inoperative or incapable of being performed." Convention, art. II(3).  Plaintiffs do not articulate their defenses in these terms, claiming instead that the arbitration provision is unconscionable and the underlying dispute is not arbitrable.  For purposes of analysis, we style the former as a "null and void" claim and the latter as an "incapable of being performed" claim.

### A.  The Arbitration Provision Is Not Null and Void

"[T]he Convention's 'null and void' clause . . . limits the bases upon which an international arbitration agreement may be challenged to standard breach–of–contract defenses."  DiMercurio v. Sphere Drake Ins. PLC, 202 F.3d 71, 79 (1st Cir. 2000).  The limited scope of the Convention's null and void clause "must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale."  Id. at 80.

Plaintiffs do not claim fraud, mistake, duress or waiver.  Instead, Plaintiffs, allege that the crewmembers were put in a difficult "take it or leave it" situation when presented with the terms of employment.  See Pl's Op. Br. at 43.  Plaintiffs

29

argue that state–law principles of unconscionability render the resulting agreements unconscionable. They support this position by citing the Supreme Court's opinion in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995) ("courts generally . . . should apply ordinary state–law principles that govern the formation of contracts"). In Kaplan, however, the Court applied the FAA, not the Convention. See id., 514 U.S. at 941, 115 S. Ct. at 1922. Domestic defenses to arbitration are transferrable to a Convention Act case only if they fit within the limited scope of defenses described above. Such an approach is required by the unique circumstances of foreign arbitration:

> concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.

Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 629, 105 S. Ct. 3346, 3355, 87 L. Ed. 2d 444 (1985)

While it is plausible that economic hardship might make a prospective Filipino seaman susceptible to a hard bargain during the hiring process, Plaintiffs have not explained how this makes for a defense under the Convention. It is

doubtful that there exists a precise, universal definition of the unequal bargaining power defense that may be applied effectively across the range of countries that are parties to the Convention, and absent any indication to the contrary, we decline to formulate one.[13]

### B.      The Arbitration Provision is Not Incapable of Being Performed

Plaintiffs argue that, under the law of the Philippines, the seamen's claims are not considered "claims arising from this employment" pursuant to Section 29 of the Standard Terms and therefore are not subject to arbitration in that country. To support this claim, Plaintiffs rely on Tolosa v. N.L.R.C. (2003) G.R. No. 149578 (Phil.). Tolosa involved a claim against a deceased seaman's employer for the grossly negligent acts of his shipmates when the he fell ill. Id. at 6. Because the complaint focused primarily on the tortious conduct of the shipmates rather than a claim "arising from employer-employee relations," the Philippine Supreme Court held that neither the labor arbiter nor the national labor relations body had jurisdiction. Id.

Here, a similar result is not foreordained. Plaintiffs have options beyond

---

[13]  This is not to say that the crewmembers were at the complete mercy of NCL. As noted above, the government of the Philippines, through the POEA, regulated the hiring process with the stated purpose of protecting the interests of seamen. Because we decide this case on other grounds, we do not reach Defendants' argument that the involvement of the POEA in the hiring process implicates the Act of State doctrine or concerns of international comity. See Defs.' Br. at 11–13.

31

tort claims; they complain that NCL failed in one of its central duties as an employer and shipowner, i.e., to provide a seaworthy vessel. Accordingly, the holding in <u>Tolosa</u> is an insufficient basis from which to conclude that this dispute cannot be arbitrated in the Philippines.

## CONCLUSION

The district court properly granted NCL's motion to compel arbitration. The plain language of the Convention Act, 9 U.S.C. §§ 201–208, precludes application of the exemption for seamen's employment agreements set forth in 9 U.S.C. § 1, and there are no impediments to the district court's jurisdiction to compel arbitration. Furthermore, the agreement to arbitrate is not null and void or incapable of being performed.

AFFIRMED.