**Micko AZAVEDO, Plaintiff,**

v.

**ROYAL CARIBBEAN CRUISES, LTD., Defendant.**

**Case No. 13–22422–Civ.**

United States District Court, S.D. Florida.

Signed Feb. 28, 2014.

Tonya Jean Meister, Meister Law LLC, Christopher John Bailey, Elizabeth Koebel Russo, Russo Appellate Firm, Miami, FL, for Plaintiff.

Darren Wayne Friedman, Marcus G. Mahfood, Foreman Friedman, PA, Amanda Lesley Jacobs, Royal Caribbean Cruises Ltd., Miami, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

MARCIA G. COOKE, District Judge.

THIS MATTER is before me on Defendant's Motion to Compel Arbitration. (ECF No. 3). Plaintiff filed his Response to the Motion to Compel Arbitration (ECF No. 17) and Defendant filed its Reply in Further Support of its Motion to Compel Arbitration (ECF No. 24). Therefore Defendant's Motion to Compel Arbitration is fully briefed and ripe for adjudication. I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons provided, Defendant's Motion to Compel Arbitration is **GRANTED.**

### I. BACKGROUND

Plaintiff Micko Azavedo filed this action alleging that he sustained an injury while working aboard Defendant Royal Caribbean Cruises, Ltd.'s ("Royal Caribbean") vessel Brilliance of the Seas. Compl. 8. Plaintiff alleges five counts against Royal Caribbean, arising under the Jones Act, 46 U.S.C. § 688: (i) negligence, (ii) unseaworthiness, (iii) failure to provide maintenance and cure, (iv) failure to treat; and (v) wages and penalties. Compl.

On July 9, 2013, Royal Caribbean removed this case from state court pursuant to 28 U.S.C. § 1441(b) and 9 U.S.C. § 205 *et seq.* (ECF No. 1). Royal Caribbean now seeks to compel arbitration pursuant to the Sign On Employment Agreement ("SOEA") entered into by Plaintiff and

Defendant. Compl. 2. The SOEA incorporates the Collective Bargaining Agreement ("CBA") between the Norwegian Seafarers Union, on behalf of Defendant seafarers, and Defendant. Mot. to Dismiss and Compel Arbitration 22.

The SOEA states in relevant part:

All grievances and any other dispute whatsoever, whether in contract, regulatory, statutory, common law, tort, of otherwise, relating to or in any way connected with the seafarer's service for the Owners/Company under the present Agreement, including but not limited to claims for personal injury/ disability or death, no matter how described, pleaded, or styled, and whether asserted against the Owners/Company, Master, Employer, Ship Owner, vessel or vessel operator shall be referred to and resolved exclusively by mandatory binding arbitration pursuant to the United Nations Conventions on Recognition and Enforcement of Foreign Arbitral Awards. ("Convention")

(ECF No. 1–3). The CBA contains a similar arbitration clause, which provides that Plaintiff's claims be resolved exclusively in binding arbitration according to the Convention. Neither the CBA nor the SOEA contain a severability provision. *Id.*

## II. LEGAL STANDARD

■ To implement the Convention, the Federal Arbitration Act ("FAA") provides two causes of action for a party seeking to enforce arbitration agreements covered by the Convention: (1) an action to compel arbitration in accord with the terms of the agreement; and (2) an action to confirm an arbitral award made pursuant to an arbitration award. 9 U.S.C.

§ 206–07. A court has very little discretion in deciding whether to enforce a valid arbitration agreement. *See Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir.2005). A district court must order arbitration if four jurisdictional prerequisites delineated in *Bautista* are satisfied. *Id.* at 1294–95. First, there is an agreement in writing within the meaning of the Convention. *Id.* Second, the agreement provides for arbitration in the territory of a signatory of the Convention. 9 U.S.C. § 205; *Bautista*, 396 F.3d at 1294. Third, the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial. *Id.* Fourth, a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states. *Id.* at 1294 n. 7.

■ Even if these prerequisites are met, removal is improper if one of the affirmative defenses applies. Under Article II "[t]he court ... shall ... refer the parties to arbitration unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *See Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1263 (11th Cir.2011). The "null and void" clause is confined to "standard breach-of-contract defenses." *Id.* at 1276. Thus, the limited scope of the clause "must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale." [1] *Lindo*, 652 F.3d at 1275; *Bautista*, 396 F.3d at 1301. "Federal courts are courts of limited jurisdiction" and any "uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. Am.*

---

1. In contrast, Article V (which applies at the arbitral award stage) enumerates seven defenses that may be applicable. One of which is the "public policy" defense. There, the court is directed to recognize the award unless recognition of the award would be "contrary to the public policy of that country." *Lindo*, 652 F.3d at 1263. Importantly, Article II contains no explicit or implicit public policy defense at the initial arbitration-enforcement stage. *Lindo*, 652 F.3d at 1275; *Bautista*, 396 F.3d at 1301.

*Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir.2001).

### III. ANALYSIS

■ As an initial matter, Plaintiff does not dispute that the arbitration agreement meets all four *Bautista* jurisdictional prerequisites. *Bautista*, 396 F.3d at 1302. First, Plaintiff signed the SOEA which obligates him to arbitrate. Notice of Removal 1. Second, the SOEA requires that the arbitration take place in Miami, Florida, Oslo, Norway or any other location agreed upon by the parties. ECF No. 1–2. Norway and the United States became a signatories to the treaty that implements the Convention on March 14, 1961 and September 30, 1970. *See treaties.un.org United Nations, Treaty Series, vol. 330 p. 3.* Thus, each potential venue for arbitration under the SOEA is a signatory of the treaty that implements the Convention. Third, Plaintiff was an employee of Royal Caribbean during all material times. *Bautista*, 396 F.3d at 1300 (holding that employment contracts are commercial legal relationships under the Convention). Fourth, Plaintiff is not an American citizen; rather, he is a citizen of India.

■ Even if the agreement satisfies the jurisdictional prerequisites, a court must further inquire into whether there are any applicable affirmative defenses. *Id.* at 1301–02. At the arbitration-enforcement stage, parties may raise certain "standard beach-of-contract defenses" that "can be applied neutrally on an international scale." *Id.* These include "fraud, mistake, duress, and waiver" but not a public policy defense, which cannot be applied neutrally on an international scale. *Maxwell v. NCL (Bahamas), Ltd.*, No. 11–21164–CIV, 2011 WL 1630899, at \*4 (S.D.Fla.2011); *see also Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1276 (11th Cir.2011). Plaintiff does not raise any "standard breach-of-contract defenses."

Instead, he argues that the arbitration clause under the agreement is unenforceable because, in tandem with its Norwegian choice-of-law clause, the agreement deprives him of his United States statutory remedies and is therefore null and void as a matter of public policy. Pl.'s Resp. in Opp'n to Def.'s Mot. to Compel Arbitration. Plaintiff's argument fails because a "public policy defense" is not a legitimate defense at the arbitration-enforcement stage.

Plaintiff points to the Eleventh Circuit's decision in *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1123 (11th Cir.2009), support his argument that the arbitration agreement is unenforceable. In *Thomas*, the court found the arbitration agreement "null and void as a matter of public policy" because it required the application of foreign law. Here, the choice-of-law provision in the SOEA specifies Norwegian law will apply. The choice-of-forum provision specifies that arbitration shall take place in Miami, Florida, Oslo, Norway or any other location agreed upon by the parties. Thus, Norwegian law will apply regardless of venue. Therefore, similar to the arbitration agreement in *Thomas*, the two provisions of the SOEA operate in tandem to limit Plaintiff's U.S. statutory remedies. *See Thomas*, 573 F.3d at 1113. However, Plaintiff's reliance on *Thomas* is misguided.

First, *Thomas* failed to follow the prior panel precedent rule. *See United States v. Smith*, 122 F.3d 1355, 1359 (11th Cir.1997) ("Under the prior panel precedent rule, we are bound by earlier panel holdingsÉ unless and until they are overruled en banc or by the Supreme Court."). In *Thomas*, the court did not enforce the arbitration agreement because the application of Panamanian law would have waived the plaintiff's "U.S. statutory rights in violation of public policy." *See Thomas*, 573 F.3d at

1120. However, four years earlier, an Eleventh Circuit panel held that the "null and void" clause at the arbitration-enforcement stage is limited to "only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale." *Bautista*, 396 F.3d at 1301. Thus, *Thomas'* expansion of the affirmative defenses available at the enforcement stage to include a "public policy defense" was contrary to Eleventh Circuit precedent. *Id.*

Moreover, the Eleventh Circuit has since abrogated *Thomas* through its decision in *Lindo; see also Brown v. Royal Caribbean Cruises*, 549 Fed.Appx. 861, 864 (11th Cir.2013). Two years after the decision in *Thomas*, the plaintiff in *Lindo* argued that the arbitration agreement should be found "null and void as a matter of public policy" because the application of foreign law would foreclose his U.S. statutory claim. *Lindo*, 652 F.3d at 1278. First, the court held that, to the extent the plaintiff relied on available Article II defenses, he did not assert a legitimate defense of "fraud, mistake, duress, or waiver." *Id.* at 1276. And, the "elimination of a U.S. statutory claim [could] not be applied neutrally on an international scale"— a requirement of an Article II defense— since each nation operates under "different statutory laws and pursues different policy concerns." *Id.* Thus, the court granted the defendant's motion to compel arbitration. Here, Plaintiff's use of a public policy defense at the enforcement stage fails for the same reasons. *Thomas* failed to follow Eleventh Circuit precedent by expanding the defenses available at the enforcement stage. In addition, the *Lindo* majority made clear that *Thomas'* expansion of defenses available against enforcement of a valid arbitration agreement violated the terms of the Convention and the holding in *Bautista*. A public policy defense is appropriate only at the arbitral award stage.

Plaintiff's remaining arguments are all public policy defenses. Plaintiff argues that seamen are wards of admiralty, who should be, and have been, protected by American courts against the "special hazards and disadvantages to which they É are subjected." Pl.'s Resp. in Opp'n to Def.'s Mot. to Compel Arbitration 4–6. Plaintiff asserts the policy of American courts to protect seamen dates back as early as medieval times for the purpose of maintaining their well-being aboard ship and at foreign ports. *Id.* at 7. Plaintiff further argues that the FAA exempts seamen's employment contracts and that the Eleventh Circuit decisions holding arbitration agreements in seafarer's agreements enforceable disregard the FAA's plain text and the expressed intent of Congress when enacting the FAA. *Id.* Since Plaintiff does not assert a "standard breach-of-contract defense" of "fraud, mistake, duress, [or] waiver" his arguments fail.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1. Defendant's Motion to Compel Arbitration (ECF No. 3) is **GRANTED.**

2. The parties shall submit to binding arbitration in accordance with the arbitration clauses in the SOEA and CBA.

3. The Clerk is directed to *administratively* **CLOSE** this case.

4. All pending motions, if any, are **DENIED** *as moot.*