**Wilfredi Argueta PEREIRA, Plaintiff,**

v.

**MSC CROCIERE, S.A., Defendant.**

**Case No. 15–20154–CIV.**

United States District Court, S.D. Florida.

Signed March 3, 2015.

Jonathan Bruce Aronson, Aronson Law Firm, Miami, FL, for Plaintiff.

Jeffrey Bradford Maltzman, Rafaela Patricia Castells, Steve Holman, Maltzman & Partners, P.A., Coral Gables, FL, for Defendant.

### ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendant, MSC Crociere, S.A.'s ("MSC['s]") Motion to Compel Arbitration ("Motion") [ECF No. 8], filed January 22, 2015. MSC seeks an order dismissing the

case and compelling arbitration pursuant to the parties' Seafarer's Employment Contract ("Employment Contract") [ECF No. 8–1]. The Court has considered the Motion; Plaintiff, Wilfredi Argueta Pereira's ("Pereira['s]") Response . . . ("Response") [ECF No. 9], filed January 27, 2015; MSC's Reply . . . ("Reply") [ECF No. 12], filed February 6, 2015; the record; and applicable law.

In his Complaint . . . ("Complaint") [ECF No. 1–5], first filed in state court, Pereira, a citizen of Honduras, alleges five claims arising out of an injury he sustained while employed as a seaman cook aboard one of MSC's vessels, the *MSC Preziosa* ("*Preziosa*"): Jones Act negligence; unseaworthiness; failure to provide prompt, adequate and complete medical care and treatment; failure to timely provide entire maintenance and cure; and tortious interference with a contractual relationship. (*See generally* Compl.). MSC, a Swiss company, removed the case on January 15, 2015. (*See* Notice of Removal . . . [ECF No. 1] ). MSC then moved to compel arbitration under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (the "Convention"), and its implementing legislation, 9 U.S.C. sections 202–208 (the "Convention Act"). (*See generally* Mot.). According to MSC, the Employment Contract between MSC and Pereira incorporates the terms of a Collective Agreement ("Collective Agreement") [ECF No. 8–2], which includes a clause requiring arbitration of Pereira's claims in Panama. (*See* Mot. 1–

2). Pereira opposes arbitration on the sole ground the parties do not have a valid arbitration agreement because the Collective Agreement does not list the *Preziosa* as one of the vessels to which the Collective Agreement applies. (*See generally* Resp.).[1]

Given the "strong presumption in favor of arbitration of international commercial disputes," a district court must enforce an arbitration agreement under the Convention Act as long as the arbitration agreement passes "a very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294–95 (11th Cir.2005) (internal quotation marks and citations omitted). First, the Court must determine whether the four jurisdictional prerequisites for the Convention are met:

> (1) [T]here is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Id.* at 1294 & n. 7 (alteration added; citation omitted). If all four jurisdictional prerequisites are met, the Court must compel arbitration unless the party opposing arbitration establishes an affirmative defense recognized by the Convention. *See id.* at 1294–95 (citations omitted).

---

1. In the Response, Pereira misconstrues MSC's argument. MSC is not asking the Court to find the Employment Contract incorporates a different collective agreement ("2014 Collective Agreement") [ECF No. 8–4], which lists the *Preziosa* but went into effect after Pereira's Employment Contract was signed. (*See* Resp. ¶ 4). MSC refers to the 2014 Collective Agreement simply to explain why the Collective Agreement did not list the *Preziosa:* the Collective Agreement predates the March 2013 launch of the *Preziosa*, whereas the 2014 Collective Agreement postdates the launch of the *Preziosa*. (*See* Mot. 4 & n. 4). In any event, and as MSC notes, this explanation is irrelevant to the analysis. (*See id.* 4).

Pereira does not dispute: Panama is a signatory to the Convention; the Employment Contract is a commercial legal relationship, *see Bautista*, 396 F.3d at 1299–1300 (holding seamen's employment contracts are commercial legal relationships under the Convention); and neither party is an American citizen. Additionally, Pereira does not raise any affirmative defense. Thus, the only issue in dispute is whether "there is an agreement in writing within the meaning of the Convention." *Bautista*, 396 F.3d at 1294 n. 7.

The Convention defines "an agreement in writing" as "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." Convention, art. II(2). The Collective Agreement's arbitration clause, if valid and binding on Pereira, requires arbitration of Pereira's claims in Panama. (*See* Collective Agreement art. 31).[2] Pereira did not sign the Collective Agreement (*see generally id.*), but Pereira did sign an Employment Contract, which provides, "[t]he current ... Collective Agreement shall be incorporated into and to [sic] form part of the [Employment Contract]" (alterations added). The Employment Contract also states in clear and unambiguous terms, "I have read, understood and agreed to all terms and conditions of employment as identified in the [Collective Agreement]" (alteration added).

Pereira does not dispute the Employment Contract incorporates the Collective Agreement. (*See* Resp. ¶ 7). Rather, Pereira contends the Collective Agreement does not apply to his claims because the *Preziosa* is not named among the vessels to which the Collective Agreement expressly applies. (*See* Resp. ¶¶ 2–3; *see also* Collective Agreement, art. 1). Pereira thus argues the Collective Agreement, including the arbitration clause, is incorporated into his Employment Contract but has no legal effect.

Courts have enforced arbitration agreements incorporated into contracts under similar circumstances. For example, courts in this District have enforced arbitration clauses in union collective bargaining agreements incorporated into seafarers' employment contracts, despite the fact the seafarers were not union members and thus would not otherwise be bound to the collective bargaining agreement. *See Polychronakis v. Celebrity Cruises, Inc.*, No. 08–21806–CIV–JLK, 2008 WL 5191104, at *3–5 (S.D.Fla. Dec. 10, 2008); *Vacaru v. Royal Caribbean Cruises, Ltd.*, No. 07–23040–CIV–UU, 2008 WL 649178, at *4–6 (S.D.Fla. Feb. 1, 2008). The Eleventh Circuit applied the same basic principle in a case under the Federal Arbitration Act, which, like the Convention, is governed by a "strong policy favoring arbitration." *See U.S. Fid. & Guar. Co. v. West Point Constr. Co., Inc.*, 837 F.2d 1507, 1508 (11th Cir.1988). In that case, a bond issuer was bound to arbitrate a dispute with the bondholder, even in the absence of an arbitration clause in the bond, because the bond incorporated the terms of a subcontract between the bondholder and a third party, and the subcontract contained an arbitra-

---

**2.** The arbitration clause provides, in part:

[A]ny and all claims from a Seafarer against the Company ..., including Jones Act claims, claims for damages for personal injury, ... negligence, unseaworthiness, failure to provide prompt proper and adequate medical care, or maintenance and cure ... shall be arbitrated in accordance with the terms and conditions in this Agree-

ment.... The arbitration referred to in this Article is exclusive and mandatory.... [A]ny grievance or dispute ... shall be referred to and finally resolved by arbitration under the American Arbitration Association.... The place of arbitration shall be Panama City.

(Collective Agreement, art. 31 (alterations added)).

tion clause. *See id.* at 1507–08. The fact the bond issuer was not a party to the subcontract was irrelevant given the bond issuer's assent to incorporate the terms of the subcontract into the bond. *See id.* at 1508.

The same basic principle applies here. Pereira signed his Employment Contract with the *Preziosa* and thereby bound himself to the Collective Agreement's arbitration clause. This created "an agreement in writing [to arbitrate] within the meaning of the Convention." *Bautista,* 396 F.3d at 1294 n. 7 (alteration added). It is irrelevant the Collective Agreement does not otherwise cover seafarers on the *Preziosa,* as Pereira expressly agreed to incorporate the terms of the Collective Agreement. Mindful that the "governing principles" of the analysis are that the Court's inquiry is "very limited" and there is a " 'strong presumption' in favor of arbitration," *Lindo v. NCL (Bahamas), Ltd.,* 652 F.3d 1257, 1278 (11th Cir.2011) (quoting *Bautista,* 396 F.3d at 1294–95), the Court finds the arbitration clause in the Collective Agreement valid and binding on the parties. No other issues are in dispute, and therefore the Court must enforce the parties' arbitration agreement. Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motion **[ECF No. 8]** is **GRANTED.** The parties must arbitrate their claims pursuant to the arbitration clause in the Collective Agreement.

2. All pending motions are **DENIED as moot.**

3. The Clerk of Court shall **CLOSE** this case.