[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 7, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12468

_____

D. C. Docket No. 04-22132-CV-ASG

INACIO EUFEMIO LOBO,

Plaintiff-Appellant,

versus

CELEBRITY CRUISES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 7, 2007)

Before ANDERSON, BARKETT and COX, Circuit Judges.

BARKETT, Circuit Judge:

Inacio Lobo, a stateroom attendant on cruise ships operated by Celebrity

Cruises, Inc. ("Celebrity"), appeals the dismissal with prejudice of his complaint

for unpaid wages and penalty wages brought under the Seaman's Wage Act, 46 U.S.C. § 10313. The district court dismissed the claim, finding that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and its implementing legislation, 9 U.S.C. §§ 202-208, superceded the Seaman's Wage Act in this case and compelled arbitration.[1] Lobo now appeals.

## BACKGROUND

As a stateroom attendant, Lobo was paired with an assistant to complete the task of cleaning each passenger cabin aboard ship. Celebrity required that stateroom attendants share gratuities with their assistants by paying them at the rate of $1.20 per passenger per day from their own earnings. Lobo alleges that Celebrity has been able to impose this requirement through duress and as a result of the unequal bargaining position of the parties, and that this requirement constitutes a failure to pay wages in violation of the collective bargaining agreement governing the terms of his employment. Lobo sued in federal court to enforce the payment of wages under the collective bargaining agreement which provided that passenger gratuities are included as part of a stateroom attendant's pay.

Celebrity moved to dismiss Lobo's lawsuit on the grounds that, pursuant to

---

[1] This Court reviews de novo a district court's order compelling arbitration. Employers Insurance of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1321 (11th Cir. 2001).

2

the same collective bargaining agreement, his wage claim must be sent to arbitration. Specifically, Article 26 of the collective bargaining agreement contains a mandatory arbitration provision providing that disputes "arising on the vessels or in connection with this Agreement" "shall" be submitted to arbitration. Lobo responded that the arbitration clause in the collective bargaining agreement was invalid because it conflicted with both the Seaman's Wage Act which gives seamen the right to access federal courts to resolve wage disputes, 46 U.S.C. § 10313,[2] and the Supreme Court's decision in  U.S. Bulk Carriers, Inc. v. Arguelles, 400 U.S. 351 (1971).

In Arguelles, the Court considered whether the provisions of the Seaman's Wage Act were displaced by the subsequent enactment of the Labor Management Relations Act ("LMRA"), which "provides a federal remedy to enforce grievance and arbitration provisions of collective-bargaining agreements" in commercial industries.  400 U.S. at 352.  The Supreme Court held that the LMRA did not abrogate the Seaman's Wage Act remedy.  Similarly, Lobo argues that, under

---

[2] In relevant part, 46 U.S.C. §10313(f) provides that "[a]t the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier."  Lobo also sought to recover "penalty wages" under 46 U.S.C. §10313(g), which provides that "[w]hen payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed."

<u>Arguelles</u>, he is entitled to sue in federal court in lieu of arbitration pursuant to the Seaman's Wage Act.

The district court rejected Lobo's argument and dismissed the complaint, finding that neither the Seaman's Wage Act nor <u>Arguelles</u> applied to Lobo's claim because effectively subsequent to <u>Arguelles</u>, the United States became obligated to abide by the international treaty whereby states must recognize and enforce international agreements to arbitrate. The treaty at issue, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), became effective in the United States on December 29, 1970 when Congress passed its implementing legislation, 9 U.S .C. §§ 202-208 (together with the Convention, "the Convention Act"). Under the Convention, "[e]ach Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen . . . between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." Convention, Article II(1).

Lobo argues on appeal, as he did below, that notwithstanding the Convention, <u>Arguelles</u>, as a matter of law, removes from the reach of the Convention all claims brought by seamen for unpaid wages and penalty wages under §10313(f) and (g). The question of whether the Seaman's Wage Act can be

4

superceded by an agreement to arbitrate which falls under the Convention is one of first impression.

## DISCUSSION

Initially, we note that there is no dispute here that the arbitration provision at issue falls under the purview of the Convention.[3] Instead, Lobo argues that his claim is exempt from the Convention, under the authority of Arguelles. We find Lobo's reliance on Arguelles to be misplaced.

In Arguelles, a seaman sued in federal court for wages, despite the arbitration provision in the collective bargaining agreement governing his employment. At issue in Arguelles was to what extent, if any, the enforcement mechanism of the LMRA[4] required the plaintiff-seaman to submit his statutory claim for wages to arbitration as provided in his collective bargaining agreement.

---

[3] As a threshold matter, in making this determination, "a court conducts 'a very limited inquiry.'" Bautista v. Star Cruises, 396 F.3d 1289, 1294 (11th Cir. 2005) (quoting Francisco v. Stolt Achievement MT, 293 F.3d 270, 273 (5th Cir. 2002)). This inquiry seeks to establish four elements: an agreement (1) in writing within the meaning of the Convention; (2) that provides for arbitration in the territory of a signatory of the Convention; (3) that arises out of a legal relationship, whether contractual or not, that is considered commercial; and (4) with a party that is not an American citizen, or where the commercial relationship has some reasonable relation with one or more foreign states. See id. at 1294 n.7; see also Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 903 (5th Cir. 2005). The district court found that each of these four elements were satisfied in this case, and Lobo does not dispute this finding on appeal.

[4] The LMRA requires the enforcement of grievance and arbitration provisions in collective bargaining agreements. The primary concern of this enforcement policy, as noted by the Court in Arguelles, was "on suits by and against labor unions" and "little attention was given to the assertion of claims by individual employees." 400 U.S. at 355-56.

5

Citing the longstanding history of the right of seamen to bring claims in federal court, the Supreme Court held that, in the absence of any suggestion in the LMRA that it was intended to supercede the right of individual seamen to sue in federal court for wages, it did not apply to the claims in that case. The Court did not mention the Convention, much less its applicability to Arguelles' claim. Indeed, it had no occasion to do so as the briefing and oral argument in <u>Arguelles</u> occurred prior to the implementation of the Convention which was effectuated on December 29, 1970. The opinion in <u>Arguelles</u> was issued only days later on January 13, 1971. Thus, we are convinced that the Court did not have the opportunity to consider the Convention in the context of Arguelles' claim.

Moreover, the underlying basis of the Supreme Court's decision in <u>Arguelles</u> was the fact that there was nothing in the language or legislative history of the LMRA to indicate an intent to abrogate the statutory right to sue in federal court afforded by the Seaman's Wage Act. The Court noted that the explicit judicial remedy of the Seaman's Wage act was not "clearly taken away" by the LMRA, and that, "[w]hat Congress has plainly granted we hesitate to deny." <u>Arguelles</u>, 400 U.S. at 357. The Court's rationale was clear: the LMRA simply addressed restrictions on the activities of labor unions; since the history of the LMRA "is silent on the abrogation of existing statutory remedies of seamen in the maritime

6

field, we construe it to provide only an optional remedy to them." Id. at 357. The Court concluded that it "would require much more to hold that § 301 reflects a philosophy of legal compulsion that overrides the explicit judicial remedy provided by 46 U.S.C. § 596." Id. at 357-58.

In contrast, in ratifying the Convention, Congress explicitly agreed to "recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen . . . between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." Convention, Article II(1). Indeed, the Convention compels federal courts to direct qualifying disputes to arbitration, while the Supreme Court found the LMRA to be silent on this matter. Albeit not in the same context as in this case, we have nevertheless held that the intent of the Convention is to promote the recognition and enforcement of arbitration provisions contained in international contracts, and that "to read industry-specific exceptions into the broad language of the Convention Act would be to hinder the Convention's purpose." Bautista v. Star Cruises, 396 F.3d 1289, 1299 (2005).[5]

---

[5] In Bautista, seamen sued their employer for personal injuries occurring onboard a vessel. Each of these plaintiffs had previously agreed in their employment contracts that any disputes would be resolved via arbitration. This court found the Convention applicable, stating that "the crewmembers' arbitration provisions constitute commercial legal relationships within the meaning of the Convention Act [and must be enforced]." Bautista, 396 F.3d at 1300.

This view is consistent with Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974), in which the Supreme Court did apply the Convention to an international commercial agreement.[6] As in Bautista, Scherk did not involve a claim for wages. In applying the Convention, however, the Court found it to be "strongly persuasive evidence of congressional policy" in favor of uniform enforcement of arbitration agreements, despite the potential presence of parochial policies present in other parts of the U.S. Code. Id. at 520 n.15. Thus, to nullify the arbitration provision here would hinder the purpose of the Convention and subvert congressional intent.

Accordingly, for the reasons discussed above, we find that the order of the district court dismissing this case in favor of arbitration must be

**AFFIRMED.**

---

[6] In Scherk, an action was brought by an American company against a German citizen to recover damages and other relief based on a claim of fraud and misrepresentation, in violation of the Securities Exchange Act, in a sale of business agreement. The defendant in Scherk sought to stay proceedings while the parties arbitrated the dispute, as provided by the sale contract as a means of settling any disputes. The Supreme Court held that the agreement of the parties to arbitrate any dispute arising out of their international commercial transaction must be enforced pursuant to the Convention.