Gregory A. HODGSON, Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD., Defendant.

Case No. 09–20798–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Aug. 4, 2009.

Barbara Jean Conner, Elizabeth Koebel Russo, Russo Appellate Firm, Luis Alfonso Perez, Luis A Perez Pa Miami, FL, for Plaintiff.

Curtis Jay Mase, Rachel Sherry Cohen, Mase, Lara, Eversole PA, Miami, FL, for Defendant.

## *ORDER*

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendant, Royal Caribbean Cruises, Ltd.'s ("RCCL['s]") Motion to Compel Arbitration [D.E. 13], filed April 30, 2009. The Court has carefully considered the parties' written submissions and applicable law.

## I. BACKGROUND

In June 2006 Gregory A. Hodgson, a seaman from Nicaragua and now a former employee of RCCL, was working aboard RCCL's *Sovereign of the Seas* when he slipped, fell and injured himself. In September 2008 Hodgson sued RCCL in state court for damages arising from his injury. Six months later RCCL removed the case to federal court stating that the parties had an arbitration agreement subject to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *done* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "Convention"), and its implementing legislation 9 U.S.C. §§ 202–208 (the "Convention Act"). RCCL now moves the Court to compel arbitration of the dispute in accordance with the arbitration agreement and the Convention.

### A. State–Court Background

Hodgson filed a four-count complaint against RCCL on September 22, 2008, alleging Jones Act negligence, unseaworthiness, failure to provide maintenance and cure, and failure to treat. (*See* Notice of Removal [D.E. 1] Ex. C). On the same date, Hodgson served the following discov-

ery requests on RCCL: interrogatories, a request for the production of documents, and a request for admissions. (*See* Pl.'s Mot. for Remand [D.E. 11]Ex. B–1 to B–3).[1] In October 2008 RCCL moved to dismiss the complaint or, in the alternative, for a more definite statement. (*See* Notice of Removal Ex. C). RCCL also served the following discovery requests on Hodgson: a request for the production of documents, a maintenance-and-cure interrogatory, and its first set of interrogatories. (*See* Pl.'s Mot. for Remand [D.E. 11] Ex. B–5 to B–7). In December 2008 RCCL responded to Hodgson's discovery requests and filed a privilege log in connection with its responses to the request for the production of documents and interrogatories. (*See id.* Ex. B–8 to B–11). The state court denied RCCL's motion to dismiss in January 2009 and directed RCCL to answer Hodgson's complaint. (*See id.* Ex. B–12).

RCCL filed its answer on February 10, 2009, and, as an affirmative defense, stated that Hodgson was employed according to all terms and defenses in a collective-bargaining agreement ("CBA"), which it invoked. (*See id.* Ex. B–13). According to RCCL, a Sign–On Employment Agreement (the "Agreement"), signed by Hodgson, incorporates the CBA. Article 26(d) of the CBA contains an arbitration clause requiring arbitration of all disputes between the parties. The Agreement governed the terms of Hodgson's employment when he was injured. (*See* Notice of Removal ¶¶ 2–5).

Hodgson served a one-page "reply" to RCCL's answer on February 16, 2009, denying each of RCCL's affirmative defenses. (*See* Pl.'s Mot. for Remand Ex. B–14). Hodgson also moved to strike most of RCCL's affirmative defenses or, in the alternative, for a more definite statement (*see id.* Ex. B–20), and served affirmative-defense and expert-witness interrogatories on RCCL. (*See id.* Ex. B–16, [D.E. 11–21] ). Hodgson also served a notice of trial giving notice that the case was at issue and ready to be tried. (*See id.* B–15).

On March 12, 2009, the state court set the case for trial for late June 2009 and ordered the parties to proceed to mediation and agree on a mediator within fifteen days. (*See* Notice of Removal Ex. C). On March 27, 2009, however, RCCL removed the case to federal court on the ground that the Agreement incorporates the CBA requiring arbitration of all disputes with RCCL and that the arbitration agreement falls under the Convention and its implementing legislation, 9 U.S.C. §§ 202–208.

**B. Federal–Court Background**

Hodgson moved to remand on April 27, 2009, arguing that RCCL had waived its right to arbitrate by waiting six months to remove, by participating in discovery in state court, and because Hodgson has been prejudiced. (*See* PL's Mot. to Remand at 1–5). On April 30, 2009, RCCL filed the present Motion to Compel, which the Court termed pending resolution of the motion to remand in order "first [to] decide upon its jurisdiction before addressing any of the issues raised in the Motion to Compel." (Order [D.E. 14] ). Determining that the Court had jurisdiction to rule on the Motion to Compel under the Convention and 9 U.S.C. § 205, the Court denied Hodgson's motion to remand on June 15, 2009. (*See* Order [D.E. 23] ).

1. A note about citations to the record is necessary. As explained in this Order, Hodgson filed a Motion to Remand, which the Court denied. Both parties have incorporated arguments from their papers on the Motion to Remand into their papers on the Motion to Compel. The Court therefore cites to both sets of papers.

## II. ANALYSIS

### A. The Convention

Under 9 U.S.C. § 206, "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." In deciding whether "to compel arbitration under the Convention Act, a court conducts 'a very limited inquiry.'" *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir.2005) (quoting *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir.2002)). This inquiry requires a determination of whether four jurisdictional prerequisites are satisfied:

(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Id.* n. 7; *accord Thomas v. Carnival Corp.*, 573 F.3d 1113, 1116–18 (11th Cir.2009). A court "must order arbitration unless (1) the four jurisdictional prerequisites are not met or (2) one of the Convention's affirmative defenses applies." *Bautista*, 396 F.3d at 1294–95 (footnote call number and citations omitted).

### B. Four Jurisdictional Prerequisites

The Court must first conduct the "very limited inquiry" into the jurisdictional prerequisites before turning to the affirmative defenses Hodgson raises. The parties do not quarrel about whether the second, third, and fourth are satisfied. Rather, only the first jurisdictional prerequisite—requiring an agreement in writing within the meaning of the Convention—is at issue.

According to RCCL, there is an agreement in writing within the meaning of the Convention. The Agreement Hodgson signed and which governed his employment when he was injured states as follows:

I understand and accept that the employer may terminate this agreement without further cause provided 7 days notice is given or 7 days pay in lieu of notice. I further understand and agree that the Collective Bargaining Agreement between the Company and the Union is incorporated into and made part of this Employment Agreement and that I and the Company are bound by its terms and conditions.

I accept the position on the ship indicated above for the date shown. I understand that if I fail to show up to join the ship on the date shown above that I waive the right to work for [RCCL] and any of its subsidiaries at any time in the future.

(Def.'s Notice of Removal Ex. A).

Underneath this paragraph is a signature line, the left of which is typed "Employee Signature," and on which appears Hodgson's signature, dated April 28, 2006. (*Id.*). Directly underneath Hodgson's signature is a second paragraph that states, "I acknowledge having received copies of: (1) the Collective Bargaining Agreement referred to above effective on the date of this Employment Agreement; (2) The Employee Handbook." (*Id.*). Underneath this paragraph is another signature line, the left of which is typed "Payroll Purser Signature," and on which appears a stamped seal bearing the name "Royal Caribbean International, 2nd Purser Payroll, Sovereign of the Seas," dated April 28, 2006. (*Id.*). On top of the seal (or perhaps underneath it) is another signa-

ture that presumably belongs to the payroll purser. (*Id.*). Even further underneath that signature is a final signature line, the left of which is typed "Employee Signature," and on which Hodgson signed. (*Id.*). The date of Hodgson's second signature is also April 28, 2006. (*Id.*).

Article 26(d) of the CBA that is incorporated into the Agreement provides as follows:

> [A]ll grievances and any other dispute whatsoever, whether in contract, regulatory, tort or otherwise, including constitutional, statutory, common law, admiralty, intentional tort and equitable claims, relating to or in any way connected with the seafarer's service for the Owners/Company, including but not limited to claims for personal injury or death, no matter how described, pleaded or styled ... shall be referred to and resolved exclusively by binding arbitration pursuant to [the Convention].... Any arbitration shall take place in the Seafarer's country of citizenship or the ship's flag state, unless arbitration is unavailable under the Convention in those countries, in which case only said arbitration shall take place in Miami, Florida.... The Owners/Company, the Unions, and the Seafarer also acknowledge that they voluntarily and knowingly waive any right they have to a jury trial. The arbitration referred to in this Article is exclusive and mandatory.

(*Id.* Ex. B). RCCL asserts that by signing the Agreement, Hodgson agreed to be bound by the terms and conditions of the CBA, one of which is an arbitration clause. The Agreement and the incorporated CBA, according to RCCL, constitute an agreement in writing within the meaning of the Convention.

Hodgson disagrees and gives three reasons for doing so. First, the arbitration clause does not appear on the face of the Agreement, and the term "Union" is unde-

fined. (*See* Pl.'s Opp'n [D.E. 24] at 4). Second, Hodgson swears in an affidavit that he was neither given a copy of nor informed about the CBA. (*See* Hodgson Aff. ¶ 9). A "plain reading" of the Agreement, according to Hodgson, shows this because "an unidentified payroll purser" purports to have received a copy of the CBA, not Hodgson. (Pl.'s Opp'n at 4). Last, Hodgson asserts the arbitration clause was not properly incorporated into the Agreement because even though the CBA is referenced in the Agreement, its specific terms are not. (*See id.* at 6–9).

Pursuant to the Convention, each signatory must "recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." Convention art. II(1). "The term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." *Id.* art. II(2).

Several judges of the U.S. District Court for the Southern District of Florida have recently ruled that cruise-line sign-on employment agreements that incorporate by reference collective-bargaining agreements containing arbitration clauses constitute agreements in writing subject to the Convention. To determine whether the Agreement at issue here should be classified similarly, a brief review of some of the cases is in order. Before doing that, however, the Court first addresses *Bautista v. Star Cruises,* 396 F.3d 1289 (11th Cir. 2005), the chief decision on the topic.

In *Bautista,* the U.S. Court of Appeals for the Eleventh Circuit affirmed the district court's finding of an agreement in

writing where the cruise line had provided copies of employment agreements and of collective-bargaining agreements containing an arbitration clause, all of which were signed by the crewmembers. *Id.* at 1300. Despite the crewmembers not having had an opportunity to review the documents, the Eleventh Circuit held the "documentation fulfills the jurisdictional prerequisite that the court be provided with an agreement to arbitrate signed by the parties." *Id.* In doing so, and in rejecting the crewmembers' assertion that the cruise line must establish they knowingly agreed to arbitrate, the Eleventh Circuit stated,

> To require such an evidentiary showing in every case would be to make an unfounded inference from the terms of the Convention and would be squarely at odds with a court's limited jurisdictional inquiry, an inquiry colored by a strong preference for arbitration. . . . In the limited jurisdictional inquiry prescribed by the Convention Act, we find it especially appropriate to abide by the general principle that one who has executed a written contract and is ignorant of its contents cannot set up that ignorance to avoid the obligation absent fraud and misrepresentation.

*Id.* at 1301 (citation, alterations, and internal quotation marks omitted). Notably, in *Bautista*, the Eleventh Circuit found the documentation—i.e., a signed employment agreement and a signed copy of a collective-bargaining agreement—to be *sufficient* to satisfy the agreement-in-writing prerequisite; the Eleventh Circuit did not, however, state that this documentation was *required* to do so.

In 2008 judges of the U.S. District Court for the Southern District of Florida concluded, in at least three cases, that the first jurisdictional prerequisite was met (a) where a crewmember signed an employment agreement that incorporated by reference a collective-bargaining agreement containing an arbitration clause, and (b) where, on the employment agreement, the crewmember acknowledged receipt of the collective-bargaining agreement. *See Polychronakis v. Celebrity Cruises, Inc.*, No. 08–21806–CIV, 2008 WL 5191104, at *4–5 (S.D.Fla. Dec. 10, 2008); *Allen v. Royal Caribbean Cruise[s], Ltd.*, No. 08–22014–CIV, 2008 WL 5095412, at *4–5 (S.D.Fla. Sept. 30, 2008); *Vacaru v. Royal Caribbean Cruises, Ltd.*, No. 07–23040–CIV, 2008 WL 649178, at *4 (S.D.Fla. Feb. 1, 2008).[2] In 2003 the court, in *Acosta v. Norwegian Cruise Line, Ltd.*, made the same finding on a slightly lesser showing, concluding that an agreement in writing existed where a crewmember signed an employment agreement that incorporated by reference a collective-bargaining agreement containing an arbitration clause. 303 F.Supp.2d 1327, 1330 (S.D.Fla.2003). *Polychronakis, Allen,* and *Vacaru* differ from *Bautista* because in *Bautista*, the district court was presented not only with employment agreements signed by the crewmembers, but also with copies of collective-bargaining agreements signed by them as well. *See Bautista*, 396 F.3d at 1300. In *Polychronakis, Allen,* and *Vacaru,* the facts differed slightly because no signed collective-bargaining agreements were presented; the crewmembers merely acknowledged receipt of them on their employment agreements. And in *Acosta* the court did not address whether the crewmember had acknowledged receipt of the collective-bargaining agreement.

■ According to Hodgson, including this case with the others—especially *Bau-*

2. The documentation presented to the Court was the same in *Del Orbe v. Royal Caribbean Cruises, Ltd.*, 549 F.Supp.2d 1365 (S.D.Fla. 2008). In Del Orbe, however, the crewmem- ber conceded that the cruise line had established the four jurisdictional prerequisites. *Id.* at 1369.

*tista* and *Allen*—would create something of an *omnium gatherum*. But a close comparison of the employment agreements shows the facts here are similar enough, if not identical, to the facts present in *Polychronakis, Allen, Vacaru,* and *Acosta* to warrant the conclusion that the first jurisdictional prerequisite is met here as well. Hodgson asserts that a payroll purser signed for receipt of the CBA. Hodgson contends that this case therefore differs from those in which a crewmember "at least signed an acknowledgment of receipt of the document containing the written agreement to arbitrate." (Pl.'s Opp'n at 5). Hodgson presumably makes this assertion because the payroll purser's signature is underneath the acknowledgment-of-receipt paragraph, which, as stated previously, appears directly underneath Hodgson's signature.

Not only is this assertion unsupported, but it fails to distinguish the Agreement from those in the other cases. First, it would be odd for Hodgson to have signed the line bearing the payroll purser's signature because *directly* to the left of the signature is typed "Payroll Purser Signature." (*See* Notice of Removal Ex. A). That line is for the payroll purser to sign, and it is therefore logical and indeed expected that a payroll purser's signature would appear there. Accordingly, the implication that Hodgson's signature ought to have appeared where the payroll purser signed is not based on any reasonable

reading of the Agreement, much less in fact.

Second, the acknowledgment-of-receipt paragraph concerns matters of the employee—i.e., receipt of the CBA (which is referred to explicitly three times within the Agreement) and of the "Employee Handbook." The most straightforward interpretation of the paragraph, in conjunction with Hodgson's signature immediately above it, and in conjunction with the principal paragraphs immediately above that, is that Hodgson's signature signifies an acknowledgment of receipt of the CBA and the Employee Handbook.

Last, in *Polychronakis, Allen,* and *Vacaru,* the courts, in construing employment agreements containing the same language, did not state that the employee signed the employment agreements twice: once under the principal paragraphs and the second on top of or immediately adjacent to the acknowledgment-of-receipt paragraph; rather, the courts simply found that the employees had acknowledged receipt of the CBA, as the Court does here. On these facts, there was an agreement in writing within the meaning of the Convention in *Polychronakis, Allen,* and *Vacaru.* And because "[i]t will not do to decide the same question one way between one set of litigants and the opposite way between another," BENJAMIN N. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 33 (1921), the Court concludes the first jurisdictional prerequisite is met.[3]

---

**3.** Because Hodgson's Agreement is the same as those discussed, it follows that Hodgson's first and third reasons in arguing that the first jurisdictional requirement is not met—undefined terms and improper incorporation—similarly fail, because each has been considered before. For a discussion of the former, see *Polychronakis,* 2008 WL 5191104, at *4 ("Plaintiff's argument that there was no valid agreement in writing under the Convention because the terms of the executed document did not provide enough specificity to give

sufficient notice was rejected by the Eleventh Circuit in *Bautista v. Star Cruises* "). Regarding the latter, *see Skordilis v. Celebrity Cruises, Inc.,* No. 08–22934, 2009 WL 129383, at *2 (S.D.Fla. Jan. 16, 2009) ("[T]he Court follows well-settled precedent in this Circuit that a collective bargaining agreement ('CBA') between Plaintiff and Defendant containing an arbitration clause 'is incorporated by reference into the main contract.' " (quoting *Allen,* 2008 WL 5095412, at *5)). Furthermore, even taking Hodgson's assertion as true that

This conclusion, however, is not based solely on "the basic principle of justice that like cases should be decided alike." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Under the Convention, a court conducts a limited jurisdictional inquiry, "an inquiry colored by a strong preference for arbitration." (*Bautista*, 396 F.3d at 1301 (citing *Francisco*, 293 F.3d at 273)). The Agreement here is simple, short, and straightforward. The words "Collective Bargaining Agreement" are typed on it several times—once directly above Hodgson's signature, and once directly below it. The CBA, which contains an arbitration clause, is incorporated expressly into the Agreement. *See U.S. Fid. & Guar. Co. v. W. Point Constr. Co.*, 837 F.2d 1507, 1508 (11th Cir.1988); *Skordilis*, 2009 WL 129383, at *2. Hodgson agreed to be bound by its terms and conditions, and his signature appears immediately above the acknowledgment-of-receipt paragraph, the signature line for an employee to sign. In conducting a limited inquiry "colored by a strong preference for arbitration," there is an agreement in writing within the meaning of the Convention.

Because the four jurisdictional prerequisites are met,[4] the Court must compel arbitration unless one of the Convention's affirmative defenses applies.

## C. Affirmative Defenses

 A court is not required to compel arbitration based on an agreement subject to the Convention if "it finds that the said agreement is null and void, inoperative or incapable of being performed." Convention art. 11(3). The null-and-void clause encompasses "only those situations—such as fraud, mistake, duress, and waiver—

that can be applied neutrally on an international scale." *Bautista*, 396 F.3d at 1302 (quoting *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 80 (1st Cir.2000) (internal quotation marks omitted)); *accord Del Orbe*, 549 F.Supp.2d at 1369. "The 'null and void' language must be read narrowly, for the signatory nations have jointly declared a general policy of enforceability of agreements to arbitrate." *Rhone Mediterranee Compagnia Francese di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 53 (3d Cir.1983); *accord Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir.1992).

Hodgson presents three affirmative defenses. The first, and the one Hodgson asserts most vigorously, is that RCCL waived any right to arbitration. The second is that the arbitration clause is void as against public policy. The third is that the arbitration clause was obtained by fraud and duress. The Court will address each in turn.

### 1. Waiver

 A "party that substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir.1990) (alterations and internal quotation marks omitted); *accord Skordilis*, 2009 WL 129383, at *3. Waiver occurs where a party "substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indemnity Assoc. (Luxembourg )*, 62 F.3d 1356, 1366 (11th Cir.1995). Prejudice may be found if "the party seeking

---

he was not given the CBA, that he acknowledged receipt thereof is sufficient in meeting the first jurisdictional prerequisite.

4. As previously stated, the parties do not dispute the existence of the second, third, and fourth jurisdictional prerequisites.

arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." *Id.* A court should examine "the totality of the circumstances" in determining whether there has been a waiver, including "the length of delay in demanding arbitration." *S & H Contractors,* 906 F.2d at 1514.

According to Hodgson, RCCL waived any right to arbitration by litigating the case in state court. RCCL served discovery on Hodgson and answered his discovery requests. RCCL moved to dismiss Hodgson's complaint and, when that motion was denied, served its answer and affirmative defenses. Only after the case was set for trial and the parties were ordered to proceed to mediation did RCCL remove the case to federal court—six months after the complaint was filed.

■ According to RCCL, six months' delay is not a substantial period of time, not least because "the Convention permits removal at any time prior to trial." (Def.'s Resp. to Mot. for Remand at 3). RCCL did not take any depositions; rather, it served only preliminary discovery requests. (*See id.*). RCCL did not file dispositive motions or seek affirmative relief from the state court. (*See id.*). What's more, RCCL contends, it "is impossible to imagine how [Hodgson] could have been prejudiced" by receiving discovery responses from RCCL. (*Id.*). That the case was set for trial should not be given great weight because it was at Hodgson's doing, and the parties can hardly be said to have been "well into the preparation of the lawsuit." (*Id.*).

Hodgson relies chiefly on *Skordilis v. Celebrity Cruises, Inc.,* where the court concluded that Celebrity had waived its right to arbitrate a seaman's slip-and-fall claim because the parties had litigated in state court for fifteen months. 2009 WL 129383, at *3. In *Skordilis,* "[o]nly on the eve of trial did [Celebrity] abruptly enact

its right to remove the case under [the Convention], and subsequently move to compel arbitration. Allowing [Celebrity] to continue this course would result in severe prejudice to Plaintiff." *Id.* Like the seaman in *Skordilis,* Hodgson states, "it cannot seriously be contended" that he and his case have not been prejudiced. (PL's Mot. for Remand at 9).

In *Skordilis* the parties litigated for fifteen months before Celebrity moved to compel arbitration; here, RCCL waited six months before doing so. In *Skordilis* Celebrity removed the case and moved to compel arbitration when the trial was only about three weeks away, or, as the court put it, "on the eve of trial." 2009 WL 129383, at *3. Here, RCCL removed the case when the trial date was three months away—hardly an eternity before trial, but not on the eve of it either. RCCL has not waived its right to arbitrate owing to the delay only—a consideration that, standing alone, proves difficult to apply consistently. *Compare Restoration Preserv. Masonry, Inc. v. Grove Eur. Ltd.,* 325 F.3d 54, 61 (1st Cir.2003) (citing cases where delays of five months and thirteen months were found insufficient to constitute waiver), *with id.* (citing cases where delays of one, twelve, and fifteen months were found sufficient to constitute waiver).

■ RCCL's delay therefore "must be evaluated in the context of litigation activities engaged in during that time." *Id.* RCCL actively participated in litigation, Hodgson states, because it served discovery, replied to discovery requests, and moved to dismiss Hodgson's complaint; and, when that motion was denied, served its answer and affirmative defenses. Yet the bulk of RCCL's state-court activity occurred at the outset of the case. When RCCL removed the action to federal court, much work had yet to be done. No depositions had been taken. *See S & H Con-*

*tractors,* 906 F.2d at 1514 (five depositions, *inter alia,* found to constitute waiver). No motions for summary judgment had been filed. *See Restoration Preserv.,* 325 F.3d at 61.

Although Hodgson set the case for trial, the record demonstrates the parties were only in the beginning stages of discovery; stated differently, although there was a trial date three months away, it does not appear that the parties had yet to prepare in earnest for it.[5] And although RCCL replied to Hodgson's discovery requests, Hodgson does not assert, and the record does not show, that he had ever produced discovery to RCCL. It is, as RCCL contends, hard to understand how the discovery that Hodgson received could have prejudiced him.

Last, RCCL cannot be said to have caused Hodgson to incur significant expense. After filing the complaint and serving the initial discovery requests—which were not attributable to RCCL's doing—the expenses Hodgson incurred owed to the motion to dismiss, the one-page "reply" to RCCL's answer, a motion to strike, serving interrogatories, and giving notice that the case was ready to be tried. Hodgson has not stated how much he has spent because of RCCL's actions. Although the Court recognizes that preparing the foregoing documents takes time, the expenses incurred do not appear to have been great.

In conclusion, RCCL did not substantially litigate "to a point inconsistent with an

intent to arbitrate," *Morewitz,* 62 F.3d at 1366, and Hodgson has not shown he has been prejudiced by RCCL's actions, *id.* Accordingly, and resolving any doubts in favor of arbitration, the Court finds that RCCL did not waive its right to arbitrate. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself *or an allegation of waiver,* delay, or a like defense to arbitrability." (emphasis added)).

### 2. *Public Policy*

Hodgson asserts that the arbitration clause is contrary to public policy and therefore void because it affects his statutory right under the Jones Act to a trial by jury. Numerous courts, however, have required arbitration of Jones Act claims according to the Convention. *E.g., Bautista,* 396 F.3d at 1292; *Allen,* 2008 WL 5095412, at *6; *Del Orbe,* 549 F.Supp.2d at 1367–68; *Acosta,* 303 F.Supp.2d at 1331; *cf. Lobo v. Celebrity Cruises, Inc.,* 488 F.3d 891, 896 (11th Cir.2007) (requiring arbitration of Seaman's Wage Act claims). Those cases do not control, Hodgson says, because of a January 28, 2008 amendment to the Jones Act.

Section 30104 of Title 46 of the United States Code currently reads as follows:

---

**5.** Rule 1.440(b) of the Florida Rules of Civil Procedure provides that "any party may file and serve a notice that the action is at issue and ready to be set for trial." As Judge Padovano has noted,

> A case is said to be ready for trial when it is at issue but in this context the term "ready" is used in a legal sense to mean that the pleadings are closed. It does not mean the lawyers are prepared to try the case. Often the lawyers will not be ready for trial when

the date is set because they will not have completed all the discovery by then. However, the fact that discovery remains to be completed has no bearing on whether the case is at issue and it is not a valid reason to delay the entry of an order setting trial. *Garcia v. Lincare Inc.,* 906 So.2d 1268, 1269 (Fla. 5th DCA 2005) (quoting Philip J. Padovano, *Florida Civil Practice,* § 15.2 (2004–2005 ed.)).

A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

The amendment struck from the statute "(a) CAUSE OF ACTION.—" and repealed subsection (b), a venue provision. Act of Jan. 28, 2008, Pub.L. No. 110–181, § 3521(a), 122 Stat. 3, 596 (to be codified at 46 U.S.C. § 30104). Former subsection (b) read, "VENUE.—An action under this section shall be brought in the judicial district in which the employer resides or the employer's principal office is located." 46 U.S.C.S. § 30104(b) (2007).

According to Hodgson, because the former venue provision has been repealed, the Federal Employers' Liability Act (the "FELA") venue provision—45 U.S.C. § 56—now governs. Section 56 states,

> Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

Hodgson asserts

> [t]his § 56 venue provision controls in Jones Act cases, and so do the federal cases interpreting and applying the provision and also the FELA prohibition § 55 against contractual attempts to restrict any rights provided under the Act: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common

carrier to exempt itself from any liability created by this chapter, shall to that extent be void[.]"

(PL's Opp'n at 14 (quoting 45 U.S.C. § 55) (second alteration in original)). Hodgson notes that

> *Bautista* and other decisions holding that the Jones Act did not prevent arbitration of seamen's Jones Act claims were decided *before* the recent amendment and deletion of the venue provision in the Act. Therefore, *Bautista* and its progeny do not act as authority to reject [Hodgson]'s above arguments made based upon the U.S. Congress' most recent pronouncement on the Jones Act.

(*Id.* at 15).

Hodgson simply reads too much into the significance of the deletion of the venue provision. He asserts that because the venue provision was repealed, then the venue provision, section 56, of the FELA governs Jones Act cases. That may very well be correct, because the FELA applies to the Jones Act. *See Kernan v. Am. Dredging Co.*, 355 U.S. 426, 439, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958); 32B AM.JUR. 2d *Federal Employers' Liability and Compensation Acts* § 29 (2009). But he then shifts to a different section of the FELA, section 55, and cases that have construed it for the proposition that contractual attempts to restrict rights under the FELA are void. So notwithstanding section 56, Hodgson's real focus is on section 55.

Hodgson gives no reason why the repeal of the venue provision of section 30104 alters the result of the cases requiring arbitration of Jones Act claims where the Convention applies. To be sure, the repeal of the venue provision simply made clear that a Jones Act claim may be brought not only where the employer resides or has its principal place of business, but also where the employer does business—as stated in 45 U.S.C. § 56 and as

had been interpreted in *Pure Oil Co. v. Suarez*, 384 U.S. 202, 204, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966), and cases that have followed it, such as *Penrod Drilling Co. v. Johnson*, 414 F.2d 1217, 1218 (5th Cir. 1969). *See* David W. Robertson & Michael F. Sturley, Recent Development, *Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits*, 33 Tul. Mar. L.J. 381, 386 (2009).

 The repeal of the venue provision is no reason to conclude that Congress has intended to exempt the Jones Act where the Convention applies. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ("Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it *unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.*" (alterations and internal quotation marks omitted; emphasis added)); *see also Lobo*, 488 F.3d at 896 ("In applying the Convention ... the [Supreme] Court found it to be 'strongly persuasive evidence of congressional policy' in favor of uniform enforcement of arbitration agreements, despite the potential presence of parochial policies present in other parts of the U.S.Code.") (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). The Court therefore concludes—as have others—that the Agreement requiring arbitration of Jones Act claims is not void as against public policy.

### 3. *Fraud and Duress*

 Hodgson asserts fraud, arguing he did not acknowledge receipt of the CBA and because he was "induced" into executing the Agreement by signing it under hurried circumstances. "To the extent that [RCCL] now attempts to put forth the acknowledgment and [Hodgson]'s signature there above as proof in this Court that [Hodgson] received the [CBA] and the arbitration clause contained therein, then his signature was obtained through fraudulent misrepresentation and omission." (Pl.'s Opp'n at 16).

This assertion does not amount to fraud, at least in regard to the Agreement. *See Allen*, 2008 WL 5095412, at *6 ("[T]he elements of fraud are (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement ... that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party." (internal quotation marks omitted)). Hodgson does not offer facts showing these elements, or demonstrate how "his signature was obtained through fraudulent misrepresentation and omission." (PL's Opp'n at 16). Hodgson, rather, appears to be asserting that RCCL is making a misrepresentation to the Court about what the Agreement demonstrates. This is not the kind of fraud falling under the scope of the Convention's null-and-void clause, a fraud "that can be applied neutrally on an international scale." *Bautista*, 396 F.3d at 1302.

 Finally, Hodgson maintains that he accepted the terms of his employment under duress. According to Hodgson, he only signed the employment documents when he was already aboard the *Sovereign of the Seas* and, if he had not signed them, he would have been stranded in Port Canaveral without money to return to Nicaragua or authorization to work in the United States. For the definition of duress, Hodgson cites *Employers Insurance of Wausau v. United States:* "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted

no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." 764 F.2d 1572, 1576 (Fed.Cir.1985).

Hodgson has not put forth evidence sufficient to demonstrate that he signed the Agreement under duress. Hodgson does not say anywhere that he accepted the terms of his employment involuntarily; he says only that he "was asked to sign documents which [he] assumed were in connection with getting employed." (Hodgson Aff. ¶ 7). Although unappealing, Hodgson had an alternative—i.e., to leave the ship. And Hodgson has not shown that the circumstances in which he signed the Agreement resulted from RCCL's coercive acts. This assertion amounts not to duress but rather to a Hobson's choice—a choice either to accept the Agreement and work or reject the Agreement and disembark. A similar defense was rejected in *Bautista*, 396 F.3d at 1302, and in *Allen*, 2008 WL 5095412, at *6.

### III. CONCLUSION

The four jurisdictional prerequisites are satisfied and none of the affirmative defenses apply. Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. The motion [**D.E. 13**] is **GRANTED.** The parties must arbitrate their claims.

2. All pending motions are **DENIED** as moot.

3. The Clerk of Court must **CLOSE** this case.