**Anna DOCKERAY, Plaintiff,**

v.

**CARNIVAL CORPORATION,
Defendant.**

**Case No. 10–20799–CIV.**

United States District Court,
S.D. Florida.

May 11, 2010.

---

Keith Steven Brais, Richard Dennis Rusak, Brais & Associates PA, Miami, FL, for Plaintiff.

Scott P. Mebane, Valentina M. Tejera, Mase Lara Eversole PA, John Maurice Mitchell, Carnival Cruise Lines, Miami, FL, for Defendant.

## *ORDER*

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on (1) the Defendant, Carnival Corporation's ("Carnival['s]") Motion to Dismiss and Compel Arbitration [D.E. 6], and (2) the Plaintiff, Anna Dockeray's ("Dockeray['s]") Motion for Remand and Request for Attorney['s] Fees [D.E. 25]. The Court has considered the parties' written submissions and the applicable law.

## I. BACKGROUND

Last September Anna Dockeray, an Englishwoman employed by Carnival as a dancer on the Panamanian-flagged *Miracle*, broke her wrist when a chair she was performing on as part of the show *Generations* collapsed. This January she filed a six-count complaint in state court against Carnival for Jones Act negligence; breach of the warranty of seaworthiness; failure to provide maintenance and cure; failure to provide prompt, proper, and adequate maintenance and cure; failure to pay unearned wages; and failure to pay earned wages and penalties under 46 U.S.C. § 10313.

On February 3 Carnival filed an answer and affirmative defenses, none of which raised arbitration. On February 26 Dockeray filed a Notice of Trial in accordance with Florida Rule of Civil Procedure 1.440(b), indicating the cause was at issue and ready to be tried. On March 5 Carnival moved for an extension of time to respond to Dockeray's discovery requests, which she had served with her complaint, and, on March 10 Dockeray "noticed" Carnival's motion for a hearing. Dockeray also filed a notice of taking the deposition of Carnival's corporate representative on March 16.

The next day Carnival removed the case to the U.S. District Court for the Southern District of Florida under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *done* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "Convention"), and its implementing legislation, 9 U.S.C. §§ 202–208 (the "Convention Act"). Carnival did so in order to compel arbitration of the case in accordance with an agreement Dockeray had entered into with Carnival:

7. *Arbitration.* Except for a wage dispute governed by [Carnival]'s Wage Grievance Policy and Procedure, any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration under the American Arbitration Association/International Centre for Dispute Resolution International Rules, which Rules are deemed to be incorporated by reference into this clause. The number of arbitrators shall be one. The place of arbitration shall be London, England, Monaco, Panama City, Panama or Manila, Philippines whichever is closer to Seafarer's home country. The Seafarer and [Carnival] must arbitrate in the designated jurisdiction, to the exclusion of all other jurisdictions. The language of the arbitral proceedings shall be English. Each party shall bear its own

attorney's fees, but [Carnival] shall pay for the costs of arbitration as assessed by the AAA. Seafarer agrees to appear for medical examinations by doctors designated by [Carnival] in specialties relevant to any claims Seafarer asserts, and otherwise the parties agree to waive any and all rights to compel information from each other.

8. *Governing Law.* This Agreement shall be governed by, and all disputes arising under or in connection with this Agreement or Seafarer's service on the vessel shall be resolved in accordance with, the laws of the flag of the vessel on which Seafarer is assigned at the time the cause of action accrues, without regard to principles of conflicts of laws thereunder. The parties agree to this governing law notwithstanding any claims for negligence, unseaworthiness, maintenance, cure, failure to provide prompt, proper and adequate medical care, wages, personal injury, or property damage which might be available under the laws of any other jurisdiction.

9. *Severability.* If any provision, term, or condition of this Agreement is invalid or unenforceable for any reason, it shall be deemed severed from this Agreement and the remaining provisions, terms, and conditions of this Agreement shall not be affected thereby and shall remain in full force and effect.

(Seafarer's Agreement Carnival Cruise Lines [D.E. 1–2] [hereinafter Agreement] ).

Dockeray opposes the Motion for three principal reasons. The first is that Carnival waived its right to arbitrate by litigating in state court before removing the case to federal court. The second is that the arbitration provision is procedurally unfair. The third is that, relying chiefly on *Thom-*

*as v. Carnival Corp.,* 573 F.3d 1113 (11th Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 1157, —— L.Ed.2d —— (2010), the arbitration agreement is contrary to public policy.

## II. LEGAL STANDARD

█ Courts having jurisdiction under the Convention Act "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. "In deciding whether 'to compel arbitration under the Convention Act, a court conducts "a very limited inquiry." ' " *Hodgson v. Royal Caribbean Cruises, Ltd.,* 706 F.Supp.2d 1248, 1252 (S.D.Fla.2010) (quoting *Bautista v. Star Cruises,* 396 F.3d 1289, 1294 (11th Cir.2005)). This inquiry requires determining whether:

(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Id.* (quoting *Bautista,* 396 F.3d at 1294 n. 7). If these "four jurisdictional prerequisites" are met, then the Court must order arbitration "[u]nless there is an affirmative defense that prevents the application of the Convention Act." *Thomas,* 573 F.3d at 1117; *accord Bautista,* 396 F.3d at 1294–95.

█ The parties do not dispute whether the four jurisdictional prerequisites are met;[1] they dispute, rather,

---

**1.** Although Dockeray contends that the third prerequisite is not met because the agreement, according to her, does not arise out of a

legal relationship that is "commercial," she recognizes that the Court is bound by *Bautista,* which held otherwise. *See* 396 F.3d at

whether any affirmative defense prevents application of the Convention Act. "A court is not required to compel arbitration based on an agreement ... if 'it finds that the said agreement is null and void, inoperative or incapable of being performed.'" *Hodgson*, 706 F.Supp.2d at 1256 (quoting Convention art. II(3)). "The null-and-void clause encompasses 'only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale.'" *Id.* (quoting *Bautista*, 396 F.3d at 1302). The null-and-void clause, moreover, "must be read narrowly, for the signatory nations have jointly declared a general policy of enforceability of agreements to arbitrate." *Id.* (quoting *Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 53 (3d Cir.1983) (internal quotation marks omitted)).

In *Thomas* the U.S. Court of Appeals for the Eleventh Circuit concluded that Article V, in addition to Article II(3), "provides specific affirmative defenses to a suit that seeks a court to compel arbitration." 573 F.3d at 1120. Article V(2)(b) provides that the "[r]ecognition and enforcement of an arbitral award may also be refused if ... [t]he recognition or enforcement of the award would be contrary to the public policy of that country."

## III. ANALYSIS

### A. Waiver

■ Dockeray contends first that Carnival waived its right to arbitrate. As the Court previously observed,

[a] party that substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate. Waiver occurs where a party substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party. Prejudice may be found if the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate. A court should examine the totality of the circumstances in determining whether there has been a waiver, including the length of delay in demanding arbitration.

*Hodgson*, 706 F.Supp.2d at 1256–57 (citations and internal quotation marks omitted).

■ According to Dockeray, Carnival waived its right to arbitrate by filing an answer and affirmative defenses, none of which raised arbitration; by moving for an extension of time to respond to Dockeray's discovery requests; and by taking two months to demand arbitration. (*See* Pl.'s Mot. 8; Pl.'s Resp. [D.E. 26] 8). Meanwhile, Dockeray filed an answer to Carnival's affirmative defenses; filed a notice of trial; served paper discovery and, based on Carnival's promise that it would respond, noticed Carnival's corporate representative for deposition; and noticed Carnival's motion for an extension of time. Carnival's actions, contends Dockeray, amount to a waiver, which, as explained, "occurs where a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Assoc. (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir.1995) (citing *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir.1986)).

1300 ("The crewmembers' arbitration provisions constitute commercial legal relationships within the meaning of the Convention Act.").

■ As an initial matter, Carnival cannot be said to have substantially litigated solely because of the two months' delay, "a consideration that, standing alone, proves difficult to apply consistently." *Hodgson,* 706 F.Supp.2d at 1257. The length of delay, rather, "must be evaluated in the context of litigation activities engaged in during that time." *Id.* (quoting *Restoration Preserv. Masonry, Inc. v. Grove Eur. Ltd.,* 325 F.3d 54, 61 (1st Cir.2003) (internal quotation marks omitted)).[2]

Despite Carnival's reliance on *Hodgson,* where more state-court activity had taken place, the facts here present a closer question. In *Hodgson* the defendant, Royal Caribbean, filed a motion to dismiss or, in the alternative, a motion for a more definite statement; served discovery requests; responded to Hodgson's requests; and then, when its motion was denied, answered the complaint. *Id.* at 1250–51. In its answer, which Royal Caribbean filed in February 2009, Royal Caribbean raised the arbitration agreement as an affirmative defense. *Id.* Over the next month Hodgson then served a "reply" to Royal Caribbean's answer; moved to strike Royal Caribbean's affirmative defenses; served interrogatories; and served a notice for trial. *Id.* In March 2009, six months after Hodgson filed the complaint but only one month after filing its affirmative defenses, Royal Caribbean removed the case to federal court. Based on these facts, as well as the fact that Hodgson had never responded to Royal Caribbean's discovery requests, the Court concluded Royal Caribbean "did not substantially litigate to a point inconsistent with an intent to arbitrate, and Hodgson ha[d] not shown he ha[d] been prejudiced by [Royal Caribbean]'s actions." *Id.* at 1258.

■ Here, unlike in *Hodgson,* Carnival's answer and affirmative defenses did not raise arbitration. To be sure, "simply failing to assert arbitration as an affirmative defense does not constitute default of a right to arbitration." *Forrester v. Penn Lyon Homes, Inc.,* 553 F.3d 340, 343 (4th Cir.2009); *accord Hill v. Ricoh Ams. Corp.,* 603 F.3d 766, 770–71 (10th Cir. 2010). Still, "not pleading arbitration in the answer can be used as evidence towards finding of waiver." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.,* 310 F.3d 102, 105 (2d Cir.2002). An early arbitration demand notifies a party that arbitration may be forthcoming, and therefore the party may prepare accordingly. *See Price,* 791 F.2d at 1161. It is for this reason that "[o]nce the defendant, by answer, has given notice of insisting on arbitration[,] the burden is heavy on the party seeking to prove waiver." *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.,* 427 F.2d 924, 929 n. 5 (5th Cir.1970).

■ In *Hodgson* Royal Caribbean responded to the complaint by filing a "mo[tion] to dismiss the complaint or, in the alternative, for a more definite statement." 706 F.Supp.2d at 1251. But "[a] party does not waive its right to arbitrate a dispute by filing a motion to dismiss or a motion to transfer venue." *Halim v. Great Gatsby's Auction Gallery, Inc.,* 516 F.3d 557, 562 (7th Cir.2008); *accord Khan v. Parsons Global Servs., Ltd.,* 521 F.3d 421, 427 (D.C.Cir.2008) ("[A] motion to dismiss may not be inconsistent with the intent to arbitrate, as where a party seeks the dismissal of a frivolous claim."); *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 888 (2d Cir.1985) ("[A motion to dismiss] alone . . . does not waive the right to arbitrate."). *But cf. Hooper v. Advance Am.,*

2. A defendant may remove an action falling under the Convention "at any time before the trial thereof." 9 U.S.C. § 205.

*Cash Advance Ctrs. of Mo., Inc.,* 589 F.3d 917, 922 (8th Cir.2009) ("Motions to dismiss are not homogeneous. District Courts should continue to consider the totality of the circumstances."). Royal Caribbean also served initial discovery requests, but "waiver will normally be found only where ... both parties had engaged in extensive discovery," *PaineWebber Inc. v. Faragalli,* 61 F.3d 1063, 1068–69 (3d Cir.1995), and Hodgson, at any rate, was not prejudiced because he never responded to the requests. Thus, by the time Royal Caribbean filed its answer asserting its right to arbitrate, it had engaged in very little, if any, activity inconsistent with that right. Hodgson's moving to strike Royal Caribbean's affirmative defenses, serving of interrogatories, and noticing the case for trial—and the concomitant expenses he incurred doing so—all came *after* he had received notice that arbitration could be forthcoming. *See Gen. Guar.,* 427 F.2d at 929 n. 5 ("Once the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver.").

 because Carnival did not raise its right to arbitrate as an affirmative defense, Dockeray did not have notice of Carnival's intent to arbitrate. Dockeray therefore incurred expenses—filing an answer to Carnival's affirmative defenses and a notice of trial, serving discovery requests, and noticing a deposition and Carnival's motion for an extension of time— that she might have avoided if Carnival had notified her at the outset that it would seek arbitration. *See Price,* 791 F.2d at 1161. Dockeray cannot be said to have suffered no prejudice by Carnival's delay. Nevertheless, waiver occurs where a party "*substantially* participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz,* 62 F.3d at 1366 (emphasis added). Carnival filed an answer and affirmative defenses and a motion for an extension of time; Carnival did not *substantially* participate in litigation to a point inconsistent with an intent to arbitrate. Accordingly, and because any doubts "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself *or an allegation of waiver,* delay, or a like defense to arbitrability," *Hodgson,* 706 F.Supp.2d at 1258 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (internal quotation marks omitted)), the Court concludes that Carnival did not waive its right to arbitrate.

**B. Procedural Unfairness**

██ According to Dockeray, the arbitration provision is procedurally unfair because, on the one hand, the "Seafarer agrees to appear for medical examinations by doctors designated by [Carnival] in specialties relevant to any claims Seafarer asserts," while on the other, "the parties agree to waive any and all rights to compel information from each other." (AGREEMENT ¶ 7). Although Dockeray "is mindful that, in choosing to arbitrate, there are certain sacrifices so that the dispute process can be streamlined," she contends "such streamlining cannot eviscerate a party's ability to establish its claim." (Pl.'s Mot. 11).

██ The Court is not persuaded by this argument. The agreement provides that arbitration will be held "under the American Arbitration Association/International Centre for Dispute Resolution International Rules," and incorporates those rules into the agreement. (AGREEMENT ¶ 7). Dockeray does not address why these rules are insufficient, nor does she cite law establishing these rules to be insufficient in resolving claims such as hers. *See Krstic v. Princess Cruise Lines, Ltd.,*

706 F.Supp.2d 1271, 1278 (S.D.Fla.2010) ("Plaintiff has failed to cite a single case holding that either unfavorable discovery procedures or the prospect of prohibitive costs constitute defenses pursuant to the Convention."). At any rate, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)); *accord Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir.2005) ("[D]iscovery limitations are consistent with the goals of 'simplicity, informality, and expedition' touted by the Supreme Court in *Gilmer*." (quoting *Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647)).

## C. Public Policy

In *Thomas* the Eleventh Circuit held that the requirements of an agreement that a seafarer must arbitrate in the Philippines and under Panamanian law "operated in tandem as a prospective waiver" of his Seaman's Wage Act claim, and the arbitration clause was therefore null and void under Article V(2)(b) of the Convention. *See* 573 F.3d at 1123–24. For more than one year Thomas worked for Carnival on a Panamanian-flagged vessel, but he only signed a seafarer's agreement containing an arbitration clause in October 2005, two months before Carnival discharged him thanks to injuries he had received while working on the vessel earlier. Thomas later brought an action in state court for Jones Act negligence, unseaworthiness, maintenance and cure, and wages under the Seaman's Wage Act. *See id.* at 1115. Carnival removed the action to federal court under the Convention Act and moved to compel Thomas to arbitrate his claims.

The Eleventh Circuit reversed the district court's grant of the motion. As an initial matter, it concluded that none of Thomas's claims, except his Seaman's Wage Act claim, was subject to the agreement, chiefly because each arose from injuries he received before he signed the agreement in late 2005. *See id.* at 1118–19. As to the Seaman's Wage Act claim, Thomas argued the arbitration clause, which required him to resolve his claim in an arbitral forum that would apply Panamanian law, operated as a prospective waiver of his U.S. statutory rights and was therefore unenforceable as against public policy. *See id.* at 1120. On a review of *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), and *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995), the Eleventh Circuit observed that the Supreme Court "has held that arbitration clauses should be upheld if it is evident that either U.S. law definitely will be applied or if, there is a possibility that it might apply *and* there will be later review." *Thomas*, 573 F.3d at 1123. Applying that principle to Thomas's Seaman's Wage Act claim, the court concluded that the arbitration clause was null and void:

> Thomas must arbitrate in the Philippines (choice-of-forum) under the law of Panama (choice-of-law). As the arbitrator is bound to effectuate the intent of the parties irrespective of any public policy considerations, these arbitration requirements have "operated in tandem" to completely bar Thomas from relying on any U.S. statutorily-created causes of action. This inability to bring a Seaman's Wage Act claim certainly qualifies as a "prospective waiver" of rights....

> Moreover, there is no assurance of an "opportunity for review" of Thomas's Seaman's Wage Act claim. Although we

are at an interlocutory stage, the possibility of any later opportunity presupposes that arbitration will provide *some* award which the plaintiff can seek to enforce. But, in accordance with our holdings above, in this case Thomas would only be arbitrating a single issue—the Seaman's Wage Act claim, one derived solely from a U.S. statutory scheme. If, applying Panamanian law, Thomas receives no award in the arbitral forum—a distinct possibility given the U.S. based nature of his claim—he will have nothing to enforce in U.S. courts, which will be deprived of any later opportunity to review.

*Id.* at 1123–24. The court made two caveats along the way: First, because Thomas's Jones Act claim was not subject to the agreement, the court did not reach whether a Jones Act claim would also be barred. *See id.* at 1120 n. 9. Second, the court emphasized the import of the decision: "the narrow holding is that the Convention *does govern* but, applying its affirmative defenses provision, we find that *the particular arbitration clause in question* is null and void as a matter of public policy." *Id.* at 1124 n. 17 (emphasis in original).

Dockeray asserts the same result follows here because her agreement, which requires her to arbitrate her claims under Panamanian law, would bar her Seaman's Wage Act claim and other claims, for which Panamanian law does not provide comparable remedies, according to Francisco Carreira–Pitti, a Panamanian lawyer. (*See* Decl. of Carreira–Pitti [D.E. 26–10] ). Yet Carnival contends *Thomas* does not control this case. In *Thomas* the only claim the Convention governed was the plaintiff's Seaman's Wage Act claim; Dockeray, instead, "has asserted a mix of statutory and non-statutory claims." (Def.'s Reply [D.E. 32] 11). Dockeray thus has remedies apart from her statutory claims, and "because [Dockeray] has not shown consistent with *Thomas* that there

is a 'distinct possibility' of not obtaining *an award* from which this Court may review the arbitrator's ruling, *Thomas* does not require the invalidation of [her] agreement[ ] to arbitrate." (*Id.* 12).

Carnival notes there is an intra-district "split of authority" on this issue, but it understates matters. *Compare Willis v. Carnival Corp.,* No. 10–cv–20732–JLK, at 3 (S.D.Fla. Apr. 23, 2010) (compelling arbitration of Jones Act and nonstatutory claims), *Bulgakova v. Carnival Corp.,* No. 09–cv–20023–PAS, at 5 (S.D.Fla. Feb. 26, 2010) (denying reconsideration of an order compelling arbitration of statutory and nonstatutory claims, including a Seaman's Wage Act claim), *Pineda Lindo v. NCL (Bahamas) Ltd. d/b/a NCL,* No. 09–cv–22926–DLG, at 7–8 (S.D.Fla. Dec. 23, 2009) (compelling arbitration of Jones Act claims), *Henriquez v. NCL (Bahamas) Ltd. d/b/a NCL,* No. 09–cv–21950–DLG, at 5–7 (S.D.Fla. Nov. 19, 2009) (same), *with Rivas v. Carnival Corp.,* No. 09–cv–23628–PCH, at 2–3, 2010 WL 2696676 (S.D.Fla. Mar. 30, 2010) (compelling arbitration where cruise line stipulated U.S. law would apply to Jones Act claims), *Sorica v. Princess Cruise Lines, Ltd.,* No. 09–cv–20917–PCH (S.D.Fla. Aug. 4, 2009) (same), *and with Krstic,* 706 F.Supp.2d at 1278–83 (severing choice-of-law clause yet compelling arbitration of all claims), *Cardoso v. Carnival Corp.,* No. 09–cv–23442–ASG, 2010 WL 996528, at *5 (S.D.Fla. Mar. 16, 2010) (same), *and further with Pavon v. Carnival Corp.,* No. 09–cv–22935–JAL, at 8 (S.D.Fla. May 6, 2010) (granting motion for reconsideration, remanding Jones Act and Seaman's Wage Act claims, and reserving ruling on whether to compel arbitration of nonstatutory claims), *and with Sivanandi v. NCL (Bahamas) Ltd. d/b/a NCL,* No. 10–cv–20296–UU, at 7 n. 7 & 9, 2010 WL 1875685 (S.D.Fla. Apr. 14, 2010) (considering severing choice-of-law clause yet ultimately remanding all statutory and

nonstatutory claims), *and last with Kovacs v. Carnival Corp.*, No. 09–cv–22630–PCH, at 1 (S.D.Fla. Jan. 27, 2010) (remanding despite stipulation U.S. law would apply to Seaman's Wage Act claims but not to Jones Act claims).

Most of these orders have been appealed from. And therefore the U.S. Court of Appeals for the Eleventh Circuit will decide the question of what a district court must do where a seafarer's complaint raises statutory and nonstatutory claims, but her agreement requires her to arbitrate and apply law that does not recognize Seaman's Wage Act or Jones Act claims. But until the Eleventh Circuit does, the judges of the Southern District, to which the bulk of these actions are removed, will continue to try to arrive at the correct solution (if there is just one), trying to comply with *Thomas*, on the one hand, while balancing the parties' express agreements to arbitrate and our "healthy regard for the federal policy favoring arbitration," *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. 927—one that "applies with special force in the field of international commerce," *Mitsubishi Motors*, 473 U.S. at 631, 105 S.Ct. 3346—on the other.

With this background in mind, and because Dockeray's agreement contains a clearly written and stand-alone severability clause, the Court, having reviewed the various decisions of the Southern District of Florida, adopts Judge Gold's approach in *Krstic v. Princess Cruise Lines, Ltd.*:

C. *Thomas* Analysis

Plaintiff further argues that the Bermuda choice-of-law provision contained in the Principal Terms renders the agreement to arbitrate unenforceable because the two clauses operate in tandem to impermissibly limit Plaintiff's U.S. statutory and common law remedies, relying on *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir.2009).

There is no dispute that the Principal Terms, as written, would require Plaintiff to arbitrate his claims in Bermuda applying Bermuda substantive law. However, the parties disagree as to whether the arbitration clause is void as a matter of public policy given Defendant's purported "stipulation" to the applicability of U.S. statutory law in the arbitral forum. Defendant argues that because of its choice-of-law "stipulation," *Thomas* does not control. Plaintiff responds that Defendant's "stipulation" is of no consequence because "stipulations" require the consent of counsel for both parties, and even if it were, it could not salvage an otherwise void arbitration agreement.

Having considered the relevant submissions and the applicable law, I agree with Plaintiff that Defendant's choice-of-law clause is void as a matter of public policy pursuant to *Thomas*. However, given the stand-alone nature of the choice-of-law clause and the Principal Terms' severability provision, the arbitration clause remains enforceable. Although the Eleventh Circuit's narrow holding in *Thomas* applied only to claims asserted pursuant to the Seaman's Wage Act, a holistic reading of *Thomas* indicates that the Eleventh Circuit's reasoning applies with equal force to claims brought pursuant to the Jones Act. Specifically, I note that the Eleventh Circuit did not focus on the unique nature of the Seaman's Wage Act in reaching its conclusion that foreign choice-of-law and arbitration clauses can—if enforced in tandem—constitute a prospective waiver of statutory rights in violation of public policy. Instead, the Eleventh Circuit focused on the fact that the clauses would "have operated in tandem to completely bar Thomas from relying on any U.S. statutorily-created causes of action." Accordingly, I conclude that *Thomas*' directives regarding

the prospective waiver of statutory remedies are applicable to Plaintiff's Jones Act claim and that, as a result, the Principal Terms' choice of law and arbitration clauses purporting to eliminate Plaintiff's Jones Act rights and remedies cannot be enforced in tandem.

. . . .

Having concluded that the choice-of-law and arbitration clauses contained in the Principal Terms—if enforced in tandem—would render the agreement a prospective waiver of Plaintiff's statutory remedies in violation of public policy, I must now determine how this matter should proceed. In crafting a remedy, I note that there are . . . two policy interests at issue here that must be respected, if possible. The first is the powerful "international policy favoring commercial arbitration," which, as the Supreme Court has expressly noted, requires the "subordinat[ion][of] domestic notions of arbitrability" in domestic courts. The second is the policy at the heart of the *Thomas* decision, which calls on courts to protect "a party's right to pursue statutory remedies" as a matter of "public policy." Having carefully considered the applicable law and the aforementioned policy interests, I conclude that the appropriate remedy is to sever the Bermuda choice-of-law provision in accordance with the Principal Terms' severability clause.

Courts "faced with arbitration agreements proscribing statutorily available remedies . . . have either severed the illegal provision and ordered arbitration, or held the entire agreement unenforceable." "Courts finding severance appropriate rely on a severance provision in

the arbitration agreement, or the general federal policy in favor of enforcing arbitration agreements." Here, there is *both* a severance provision *and* a strong policy favoring arbitration. Moreover, unlike the cases in which severance was held to be an inappropriate remedy, the clause in which the parties agreed to arbitrate their disputes stands separate and apart from the unenforceable foreign choice-of-law clause. . . . I am not faced with a few sentences embedded within an integrated arbitration provision that purport to limit a party's statutory remedies. Instead, I am faced with a stand-alone choice-of-law provision—in an agreement that expressly provides for severance of unenforceable provisions—that must be condemned as a matter of public policy. Accordingly, I conclude that severance of the unenforceable choice-of-law provision is the appropriate remedy, as it promotes both policies at issue without having to unnecessarily elevate one over the other; the arbitration provision remains enforceable.

706 F.Supp.2d at 1279–81 (citations, alterations, and footnote call numbers omitted).

According to *Thomas*, "arbitration clauses should be upheld if it is evident that either U.S. law definitely will be applied or if, *there is a possibility that it might apply and there will be later review*." 573 F.3d at 1123 (emphasis added). The Court rules that paragraph 8 of the agreement, which the parties agree requires the application of Panamanian law to Dockeray's claims, is unenforceable. Because there is now a possibility that U.S. law might apply and there will be later review,[3] the Court upholds the arbitration clause.

---

3. If after arbitration either Dockeray or Carnival applies to a competent court for an order confirming the award, *see* 9 U.S.C. § 207, or if Carnival, were it to receive a favorable award, pleads res judicata as a defense if Dockeray were later to bring an action based on her claims, *see Pike v. Freeman,* 266 F.3d 78, 90–91 (2d Cir.2001), there would be a possibility of later review here.

## IV. CONCLUSION

Consistent with this analysis,[4] it is

**ORDERED AND ADJUDGED** as follows:

1. Carnival's Motion **[D.E. 6]** is **GRANTED IN PART.**

 a. Paragraph 8 of the agreement [D.E. 1–2] is **UNENFORCEABLE.**

 b. The parties must arbitrate their claims.

2. Dockeray's Motion **[D.E. 25]** is **DENIED AS MOOT.**

3. All pending motions are **DENIED AS MOOT.**

4. The Clerk of Court shall **CLOSE** this case.

---

4. The Court has considered and rejects the argument that the arbitration clause is unenforceable because it precludes Dockeray from resolving the dispute in the location where Carnival does business. *See Harrington v. Atl. Sounding Co.,* 602 F.3d 113, 124 (2d Cir. 2010) ("FELA §§ 5–6 and *Boyd* [*v. Grand Trunk Western Railroad Co.,* 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949)] are inapplicable to seaman arbitration agreements...."); *Hodgson,* 706 F.Supp.2d at 1258–61.

Last, even assuming, in light of *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004), that 28 U.S.C. § 1782 applies to private arbitrations, *but see Republic of Kaz. v. Biedermann Int'l,* 168 F.3d 880 (5th Cir.1999) ("[W]e conclude that the term 'foreign and international tribunals' in § 1782 was not intended to authorize resort to United States federal courts to assist discovery in private international arbitrations. The provision was enlarged to further comity among nations, not to complicate and undermine the salutary device of private international arbitration."); *Nat'l Broad. Co. v. Bear Stearns & Co.,* 165 F.3d 184, 191 (2d Cir.1999) ("[O]ur conclusion, based upon an analysis of the text and legislative history of § 1782, [is] that Congress did not intend for that statute to apply to an arbitral body established by private parties."), the Court declines to "retain jurisdiction," assuming it needs to, to compel Carnival to produce testimony and documents here. *See In re Clerici,* 481 F.3d 1324, 1332 (11th Cir. 2007) ("[Section] 1782 'authorizes, but does not require, a federal district court to provide assistance.'" (quoting *Intel Corp.,* 542 U.S. at 255, 124 S.Ct. 2466)).